## C. G. MIKESELL v. WABASH RAILROAD Co., Appellant.

**Railways:** KILLING OF STOCK: FAILURE TO FENCE: PROXIMATE CAUSE. Where stock strays upon a right of way by reason of the company's failure to properly fence the same and by some act of the employés of the company, whether negligent or otherwise, it is caused to run into a bridge and is thereby injured, the failure to fence together with the act of the employés constitutes the proximate cause of the injury for which the company is liable.

**Same:** EVIDENCE. The fact that stock was in a pasture a short time before it was killed upon an adjoining right of way, and that at one point there was no right of way fence, will, in the absence of direct evidence upon the subject, justify the conclusion that it went upon the right of way through the opening rather than that it jumped over a sufficient fence at another point.

**Evidence:** CONCLUSION: PREJUDICE. Although evidence is erroneously rejected as a conclusion, prejudice will not result where the witness is subsequently permitted to detail the facts upon which the supposed conclusion is based.

**Killing of stock:** SUBMISSION OF ISSUES. Where a petition alleged failure to maintain a sufficient right of way fence and the evidence is undisputed that for some distance and for some time no fence whatever had been maintained, submission of the issue of failure to keep the fence in repair was without prejudice, even though there was no allegation to that effect; as proof of injury to stock by reason of a lack of fence, in connection with an operation of the road, made a *prima facie* case, and the burden was upon the company to establish the erection of a sufficient fence.

*Appeal from Marion District Court.*— HON. JAS. D. GAMBLE, Judge.

FRIDAY, JUNE 7, 1907.

ACTION for double value of a mare alleged to have been injured through the defendant's failure to maintain a suffi-

cient fence along its right of way. Judgment was entered as prayed. The defendant appeals.— *Affirmed.*

*Kinkead & Mettzer,* for appellant.

*Hays & Amos,* for appellee.

LADD, J.— The defendant's railroad passes through the farm of thirty-eight acres belonging to plaintiff's mother from the northwest to the southeast, leaving about four acres on the south side of the right of way. There is a cut where it enters at the northwest, so that the south side is about fifteen feet above the level, and the north not so high. The road is graded up from that point toward the southeast to a bridge or tressel about three hundred feet distant. This grade is about fifteen feet above the general surface. A creek runs along the north side of the right of way and parallel with it. The right of way fence north of the track for a distance of two or three hundred feet had been washed out about a year before, and had not been repaired or replaced. In the morning of April 12, 1905, plaintiff turned a mare and colt into his pasture north of the railroad, and, after a while, noticed that they were on the right of way. The evidence on the part of plaintiff tended to show that when he called to the horses they threw up their heads, looked towards him, and then whirled and went on the railroad track toward the east; that immediately thereafter a hand car came along the track from the northwest, with several men on it, holloing, and did not stop until the mare ran into the bridge; that the horses were running their best, and the hand car followed about as fast to a point about sixty yards from said bridge. The witnesses agree that the horses could have passed from the cut northwest of the bridge to another southeast of it without going on the track; but, while plaintiff testified that the grade extended so near the fence that an animal could · hardly get through, and that the north side was strewn with

rocks and ties, defendant's witnesses were certain there were no obstacles in the way. The evidence in behalf of defendant was that, as soon as the men on the car saw the horses, they stopped it; that the horses were then standing, and two of the men alighted and started them up with a view of getting them off of the way; that they walked along till at the corner of the cut, and then went on the track and trotted from there to the bridge; that after starting them nothing more was done by the section-men; that the car was brought along behind them and stopped one hundred and seventy-five yards or more before reaching the bridge.

From the evidence as thus epitomized, it is apparent that several conclusions were open to the jury: (1) That the mare was frightened onto the bridge by the approach of the hand car, or (2) by the noise of the men riding thereon; (3) that owing to the grade, with rock and ties on the ground, she went from the side on the track as a result of being started in that direction by defendant's employés, or (4) that she might have kept the side of the way, but went on the track and into the bridge on her own volition, and uninfluenced by being started by the employés in that direction. The bare statement of the first two furnish sufficient answer to the appellant's contention that there was not sufficient evidence to carry the case to the jury. True, there was no collision between the car and the mare. Nor was this essential to recovery. The object in requiring the right of way of a railroad to be fenced is to protect stock from injury from the operation of the railroad. Possibly a railway company may also be liable for stock, injury to which is due to constructing its road-bed and track so as to render it, when not properly graded, peculiarly dangerous to such animals as may come thereon; but that question, though mooted in argument, is not involved in this action. The design of the Legislature was not to cast on the railroad companies burdens greater or different than on others in like situation, but to

1. RAILROADS: killing of stock: failure to fence: proximate cause.

require them to protect others against those dangers to stock peculiarly incident to the business of operating a railroad. This being so, the matter of negligence of its employés in such operation is immaterial. *Liston v. Railway Co.,* 70 Iowa, 714; *Meeker v. Railway Co.,* 21 Or. 513 (28 Pac. 639, 14 L. R. A. 841, 28 Am. St. Rep. 758). The companies will not be held for damages resulting from a catastrophy of nature or due alone to the eccentricity of the particular animal, even though this happen when the animal is on the right of way owing to an omission to fence. Why? The operation of the railroad thereon, which distinguishes the right of way from lands of other adjoining owners, had nothing to do with the injury. It was as likely to happen had the animal been on the lands of a neighbor as in the right of way. This proposition was touched in *Young v. Railway,* 44 Iowa, 172, where it was said, by way of illustration, that if an animal should be killed by lightning, or in a frolic should run into a bridge and be injured, the company would not be liable, for it " would have had no reason to apprehend the occurrence of an injury in that way." In giving this reason the writer of the opinion must have had in mind a condition of the right of way in itself, when unguarded, which would be negligent as to trespassing animals, for certainly, in actions for damages to stock owing to the failure to maintain a sufficient fence, no question of foresight is involved. The matter of foresight has been disposed of by the Legislature in enacting that: " Any corporation operating a railway, and failing to fence the same against live stock running at large and maintain proper and sufficient cattle-guards at all points where the right to fence or maintain cattle-guards exists, shall be liable to the owner of any stock killed or injured by reason of the want of such fence or cattle-guards for the full amount of damages sustained by the owner on account thereof, unless it was occasioned by his wilful act or that of his agent; and to recover

the same it shall only be necessary for him to prove the loss of or injury to the property." Section 2055, Code.

The inquiry is that of sequence, not of foresight, and is directed to the determination of whether the damages to stock as proven are the proximate result of the failure to fence in connection with the operation of the road. The rule deduced in *Young's* case makes this clear, for it was there announced thus: "When, then, may it be said that an animal is injured by reason of a want of a fence within the meaning of the statute? It is when the want of a fence in connection with the acts of the defendant is the proximate cause of the injury." This is referred to with approval in *Ashbach v. Railway,* 74 Iowa, 248, and in both cases the defendant was adjudged liable, though in neither had there been a collision, and in each the horse was merely frightened by an approaching train so that it ran into a bridge. The entire subject is somewhat elaborately considered in *Meeker v. Railway, supra,* and the like conclusions reached. The section-men, running a hand car over the track, were engaged in the operation of the road. *Larson v. Railway,* 91 Iowa, 81; *Chicago, M. & St. P. R. Co. v. Artery,* 137 U. S. 507 (11 Sup. Ct. 129, 34 L. Ed. 747). The use of such car is peculiar to railroading, and when in motion is quite as likely to frighten animals within the right of way as moving trains. If, then, the plaintiff's mare got on the right of way because of the failure of defendant to inclose it with a sufficient fence, and this, in connection with the fright caused by the approach or movement of the hand car on the track, or the sectionmen engaged in moving the car and acting therein within the scope of their employment, even though not negligent, was the proximate cause of the injury, the plaintiff is entitled to recover. If the mare went into the bridge solely of her own volition, and was uninfluenced by the conduct of the men or by their acts in connection with the movement of the hand car, the company is not liable. The test is not, as appellant contends, whether the result might have

been foreseen, but whether the injury is the natural and proximate consequence of the failure to properly fence in connection with the operation of the railroad.

II.    Appellant contends there was no evidence that the horses escaped through the space where the fence had been destroyed.    From the facts that the pasture was small, that

2. SAME: evidence.

they were in the pasture shortly before seen on the right of way, that the fence was intact elsewhere, together with the nature of the animals, the jury might have inferred that they passed on the right of way where there was no fence, rather than that they jumped over a sufficient fence, if any there was near by.    See *Klay v. Railway,* 126 Iowa, 671.

III.    A witness for the defendant was asked to state whether either of the horses was frightened by the approach of the hand car.    The objection that this called for a conclu-

3. EVIDENCE: conclusion: prejudice.

sion was sustained.    The ruling, though erroneous, *Yahn v. Ottumwa,* 60 Iowa, 429, was without prejudice.    The witness subsequently testified that the horses did not start to walk or run until after the hand car had stopped, and the men had gotten off and started them.    The facts, if as recited by the witness, left no other inference than that they were not frightened.    Any prejudice resulting from an error in sustaining a similar objection to a like question propounded to another witness was obviated in the same way.

IV.    It is conceded that the petition alleges a failure to maintain a sufficient right of way fence.    Counsel for appellant argue that it does not allege negligence in keeping

4. KILLING OF STOCK: submission of issues.

such fence in repair, and therefore that the court erred in submitting the case on that theory to the jury.    If so, it was error without prejudice.    The evidence that there was no fence along the right of way for a space of three hundred feet, and that there had been none for more than a year, was undisputed. Proof that the mare was injured by reason of the want of a

fence, in connection with the operation of the railroad, made out a *prima facie* case for the plaintiff, and the burden was upon the defendant to establish the erection of a good and sufficent fence. *Brentner v. Railway,* 68 Iowa, 530; *Small v. Railway,* 50 Iowa, 338. This it utterly failed to do. If there was ever a sufficient fence at that place, the record fails to disclose the fact. The inquiry as to whether the defendant had been negligent in failing to keep it in suitable repair, in these circumstances, could not have prejudiced its case.

The judgment is *affirmed.*