LONG POLE LUMBER CO. v. GROSS.

(Circuit Court of Appeals, Fourth Circuit. July 14, 1910.)

No. 939.

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—RAILROADS—CON-
STRUCTION—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to an engineer on a logging road by the collapse of a trestle, whether defendant exercised due care in the construction of the trestle was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 112*)—INJURIES TO SERVANT—SAFE PLACE TO WORK
—RAILWAYS.

The duty of a master to maintain a safe place to work, which in the case of a railway means a safe roadbed, etc., applies to every railway, of whatever description, including a logging road.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 218–223; Dec. Dig. § 112.*]

**3.** PLEADING (§ 430*)—ISSUES AND PROOF—VARIANCE—OBJECTIONS—TIME.
An objection that there was a variance between the pleading and proof when first made after verdict is too late under the laws of Virginia.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1438–1441; Dec. Dig. § 430;* Trial, Cent. Dig. § 266.]

**4.** MASTER AND SERVANT (§ 226*)—INJURIES TO SERVANT—RAILROADS—ENGINEERS—ASSUMED RISK.
While a locomotive engineer assumes such risks as are open and obvious, including risks incident to patent defects in the machinery, he does not assume the risk of latent, unobservable defects including the dangers incident to running over a defective bridge which had been improperly constructed, and was in disrepair. ₀

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–.667; Dec. Dig. § 226.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**5.** MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—RAILROADS—DEFECTIVE BRIDGE—KNOWLEDGE OF DANGER—INSTRUCTIONS.
Where, in an action for injuries to an engineer by reason of the collapse of a bridge improperly constructed and in disrepair, defendant claimed that plaintiff had been instructed to examine all trestles along the road before crossing them, which plaintiff denied, the court properly submitted such question to the jury by an instruction that it was not incumbent on plaintiff to discover or anticipate and guard against any dangerous condition in the roadbed, tracks, or bridges which the exercise of ordinary care on defendant's part would have prevented, unless such condition was known to plaintiff prior to his injury, or was so open and obvious that it ought to have been known to any one in his situation at the time, had he used his senses; the burden being on defendant to prove that plaintiff did in fact have such knowledge, or that the condition of the bridge and the danger were so open and obvious that it ought to have been known to plaintiff had he used his senses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

**6.** MASTER AND SERVANT (§ 226*)—INJURIES TO SERVANT—ASSUMED RISK.
Where plaintiff, an engineer on a logging road, when injured was operating an engine pushing a train of cars, and the track foreman was on the front car under orders from the superintendent to keep a lookout and determine whether the roadbed was in safe condition, plaintiff was entitled to rely on the foreman's faithful performance of his duties, and did not assume the risk of the foreman's failure to examine a defectively constructed bridge which had become in disrepair, by the collapse of which plaintiff was injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.*]

**7.** MASTER AND SERVANT (§ 190*)—INJURIES TO SERVANT—FELLOW SERVANTS—NONASSIGNABLE DUTY.
Where defendant's track foreman at the time plaintiff was injured was riding on the front car of the train being pushed over the road, in order to examine the condition of the roadbed, and ascertain whether it was safe, he was performing a nonassignable duty of the master, and was not a fellow servant of the engineer of the locomotive pushing the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

8. PLEADING (§ 237*)—AMENDMENT TO CONFORM TO PROOF.
Code Va. 1904, § 3384, provides that, where a variance between the issues and proof.appears, the court to promote substantial justice, if the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended on such terms as to payment of costs, or postponement of the trial, or both, as may be deemed reasonable, or the court may direct the jury to find the facts, and after such finding, if it consider the variance could not have prejudiced the opposite party, shall give judgment according to the right of the case. *Held*, that where plaintiff sought to recover for injuries while operating a locomotive because of the collapse of a bridge, and alleged that defendant was negligent in the construction of the bridge, but the evidence showed that defendant's failure to inspect the bridge after a rain was the cause of the accident, the court at the conclusion of the evidence could properly permit plaintiff to amend his declaration so as to allege that the stringer of the bridge which broke was insufficient unless properly supported, and that by reason of defendant's failure to make reasonable inspections it was not properly supported at the time of the accident, and caused the injury; there being no demand by defendant for the imposition of terms or for a continuance by reason of such amendment.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603–619; Dec. Dig. § 237.*]

In Error to the Circuit Court of the United States for the Western District of Virginia, at Lynchburg.

Action by Charles Gross against the Long Pole Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff below—now designated as defendant in error—was employed by the defendant below as locomotive engineer, and was engaged in running defendant's locomotives from the mills to its timber standing in the woods. Defendant operated a lumber plant and a railroad or tramroad from its plant to the woods where it owned standing timber, and, when the timber was cut, the logs were loaded on cars and hauled over this road by the locomotive to the mills. Plaintiff was hired as engineer for about two years prior to the accident complained of in this action. The railroad in question was five or six miles long, and ran up Lewis' creek, in Russell county, Va., and there were many bridges and trestles in the road over which the locomotive and cars had to run. The country was hilly and mountainous and the creeks were often considerably swollen and the bridges and track were liable to be washed out as a result of the rains. Some few weeks before the accident there had been washouts of some of the bridges, and it was necessary to replace them.

Noah Brown, foreman of defendant's hands, was requested to replace the bridge in question. The bridges were built by building two wooden abutments (like a square pen), and then laying two wooden "stringers" parallel to each other and ——— feet apart from one abutment to the other, then laying cross-ties across the "stringers" (the cross-ties extending over the side of each "stringer" about a foot), and then laying wooden rails across the ties, parallel with and over the "stringer." In the construction of the bridge in question Brown had charge of the work. It appears from the evidence that he put in an old, knotty piece of timber which was taken up out of an old track, and had a "saddle-notch" cut in it about three or four inches deep, as one of the stringers. He was told at the time by witness Hugh Gillespie that the stringer was "no account," and it also appears from the evidence that this stringer would not have supported an unloaded train or empty locomotive. After the bridge was built this "stringer" was propped up to keep it from breaking, and plaintiff ran his locomotive and train over it daily.

On Saturday and Sunday before the accident (which happened on Monday) there was a rain, the first after the bridge was built; but it appears that the rain was not heavy, and that the creek was only "a little bit" flush. On

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Monday morning after this rain plaintiff started out with his train, pushing five cars ahead with train foreman (who was also track foreman) Estep in charge. The cars were 22 feet long, the locomotive 15 feet, making the train 125 feet long, with the locomotive and engineer (plaintiff) in rear. Foreman Estep rode on front end of front car, for the purpose of watching the track and bridges, to see if the water had washed out any props, etc. They ran over all the bridges safely until they got to the one in question, and just as they reached this one Estep concluded that because they had gotten over the others safely he "hardly thought it worth while" to look out for this one; and it appears from the evidence that he had not made any inspection of this bridge in question from about the date the props were put under it up to the date of the accident. About the time the front car reached the bridge, Estep quit his post and went back to the engine to sand the track. The cars went over safely, but when the engine got on the bridge the engineer (plaintiff) heard something begin to "pop," and the next thing he knew his engine went over and inflicted the injuries complained of. The dangerous "stringer" had broken in two in the "saddle-notch" under the weight of the locomotive. The props were washed out and were afterwards seen lying in the creek nearby.

The jury returned a verdict in favor of the plaintiff in the sum of $3,500, together with interest on the same from September 22, 1909, from which judgment defendant sued out a writ of error.

P. H. C. Cabell and V. L. Sexton (Sexton & Roberts, on the brief), for plaintiff in error.

Wm. H. Werth (Routh & Routh, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). There are a number of assignments of error. The first relates to the refusal of the court to grant the motion of the defendant below to instruct the jury to return a verdict in its favor. This motion was based upon the following grounds: (a) That no negligence on the part of the defendant as the proximate cause of the injury was shown; (b) the negligence, if any, was that of a fellow servant; (c) the plaintiff assumed the risk. The learned judge who tried the case below in overruling the motion made the following statement:

"The rule of the federal court, as I understand it, as to fellow servants, is that with regard to such employés as we are considering in this case it depends on what the negligent servant was doing; that is to say, that the servant from whose negligence the plaintiff suffers was engaged in performing a nonassignable duty of the master. He is not a fellow servant of the plaintiff. It seems to me that the plaintiff here suffered injury from the negligence of Mr. Estep, who was charged with the duty of making an inspection to discover the result of this recent rise in the stream. Consequently, in the performance of that duty, he was performing a nonassignable duty. He was a vice principal, and not a fellow servant of the plaintiff. It seems to me that there is evidence of negligence; that is to say, evidence tending to show negligence on the part of the defendant in not having a proper inspection of the bridge made after knowing there had been a rise in the stream since Saturday.

"The Court: The motion for a peremptory instruction is overruled.

"Mr. Cabell: Save the point."

It appears from the foregoing that the court was of opinion that the defendant's liability grew out of the failure to inspect the bridge after the rain. However, an inspection of the record discloses the fact

that the original declaration contains an allegation to the effect that the defendant in the construction of its bridge or trestle at the point where the injury was incurred failed to use ordinary care, caution, and diligence in the selection of its stringers for the purpose of connecting one abutment with the other, and that the company placed across said trestle one stringer far too small and weak for the purposes of such construction, and that it was further weakened by rot and decay, and because of such defects was too weak, by far, to support an engine and loaded cars, such as were used over this line. These allegations could have been made more explicit, but we think they are sufficiently clear to inform the defendant of the character and nature of the negligence alleged to enable it to make proper defense to the same. There was evidence offered tending to show a failure on the part of the defendant to properly construct the trestle, that the stringer was weak and defective, and that the supports in the shape in which they were put in were liable to be washed away. There was, we think, sufficient legal evidence to go to the jury on the question as to whether the defendant exercised due care and caution in the construction of the bridge. It appears from the evidence of Superintendent Settle that he was as a matter of fact informed as to the dangerous condition of the road after the rain, and gave Foreman Estep express instructions to inspect on account of such condition. Among other things, in his testimony bearing on this point, Settle said:

"* * * Q. What orders did you give to Mr. Estep, and when did you give them to him, and where? A. These—

"Mr. Worth: Wait. Are you going to show that those orders came to the plaintiff? I object. (Overruled. Point saved.)

"Q. Read the question. (It is read.) A. Saturday night and Sunday was when this rain was, I think it rained, up until about 1 o'clock on Sunday, and I was out looking at the flood, or looking at the situation to see how bad the flood was, near the place where I boarded at Mr. Osborne's. This house was very close to Lewis creek, the main creek below the mill, and I says to Mr. Estep, I says, 'I wonder how serious this flood is.' I says: 'It may not be as bad up on the logging road as it is here, as this place where we were was below the forks.'

"Q. Below what? A. The forks in the creek, where they came in, known as lower branch of the creek, where I was. We had water from both streams. I told him what to do, you understand, Monday morning, and I says to Mr. Estep: 'Now, I want you to be careful, as this flood, I don't know how bad it is, to be careful, and examine these trestles carefully, before you go over them, and I will go with the dry lumber train in the morning to examine these trestles.'

"Q. What position did Mr. Estep hold? A. Mr. Estep was train foreman.

"Q. Train foreman? A. Yes, sir."

Thus it appears that the superintendent had full knowledge of the rain, and that he gave Estep (the foreman) instructions to make proper inspections on account of the same. That it was the duty of the defendant company to maintain a safe place to work—roadbed, etc.—we think is the well-settled law of the land; and this applies to every railway, of whatever description.

Section 4274, 4 Thompson on Negligence, among other things provides:

"The obligation of maintaining a safe track for the protection of the servants employed in the operation of the railway is ascribed to every proprietor

operating a railway of whatever description, and it is quite immaterial that the person or corporation operating the railway is not the owner of it."

Also, Labatt on Master & Servant, §§ 67, 68b, contains the following statement as to the law bearing upon this subject:

"Railway Tracks; Generally.—The general rule is that any person who maintains a railway as a part of his plant is bound to exercise ordinary care to the end that it shall be so constructed and maintained as to be reasonably safe as a place to work. For the purpose of this rule it is immaterial whether the employer is as is usually the case a company engaged in transportation as a common carrier, or a company or individual operating a railway as an accessory to some other business—as a coal company, or a lumber manufacturer who owns and conducts a railroad running from his mill to the timber.

"Bridges.—Negligence is predicable of the construction of the bridges which are of insufficient strength to withstand the floods in the water course which they span, or are not strong enough to support the rolling stock."

It is insisted that there is a variance between the evidence and the allegations contained in the declaration as to the construction of the bridge. No exception was taken to the evidence relating to this question, and it was permitted to go to the jury unchallenged. The failure of the defendant to object to this evidence at the time of its introduction was equivalent to a waiver, and it was too late, after a verdict had been rendered, to interpose an objection to the same. There may be an exception to this rule in some jurisdictions, but such is the rule in the state of Virginia.

In the case of Bertha Zinc Co. v. Martin's Ex'rs, 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999, the first syllabus reads as follows:

"An objection that there is a variance between the evidence and the allegations should be made at the trial, so that the opposite party may be given the opportunity to amend, under Code 1887, § 3384 (Code 1904, p. 1792)."

Also, in the case of Portsmouth St. R. Co. v. Peed's Administrator, 102 Va. 662, 47 S. E. 850 it was held that, where there is a variance between the evidence and the allegations, the correct practice is to object to the evidence when offered, or move to exclude it; the attention of the court being thereby called to the variance, and an opportunity afforded to meet the emergency under the statute.

It is further contended by defendant that the plaintiff assumed the risks ordinarily incident to his employment, which, among other things, included any defects there may have been in the construction of the bridge or in keeping the same in proper repair. It cannot be reasonably contended that an engineer is required to stop his engine every time he approaches a trestle or bridge for the purpose of inspecting the same. While, by virtue of his contract, the engineer, like other employés, assumes those risks that are open and obvious—and this is also true as to any defects of machinery that are patent—yet it is not true as to defects that are latent and therefore unobservable. The defendant sought to show by the testimony of witness Newenham that the plaintiff had been instructed by the superintendent of the company to examine all trestles along the road before crossing them. The deposition of Newenham was offered in evidence, and among other things the witness made the following statement:

" * * * Gross told me in a conversation I had with him when I went down to investigate it that he was instructed by the superintendent of the company, Mr. Henry Settle, to examine all trestles along the road before crossing them; that he examined all but this one, which was the last one, so he did not examine it; and that the accident was his own fault."

This evidence is rather vague and indefinite, inasmuch as the witness does not undertake to fix the time when the instructions were given to the plaintiff. The construction sought to be placed upon this testimony was that it tended to establish the fact that the plaintiff had been so instructed after the rain had washed away the props in question; that in the light of this evidence the plaintiff assumed the risk incident to passing over the bridge at the time the accident occurred.

After having testified, the plaintiff below was recalled and testified as follows:

"Q. Mr. Gross, please state if you ever had a conversation with Mr. Newenham, and if you told him that you were instructed by the superintendent of the company, Mr. Henry Settle, to examine all the trestles along the road before crossing them, and that you examined all but this one, so you did you examine it and that the accident was your own fault? A. No, sir."

The testimony of Newenham was flatly contradicted by the plaintiff, and the court very properly submitted an instruction by which the jury was left to determine whether the plaintiff made such statement and whether he received such instructions from the superintendent. The instruction of the court on this point is in the following language:

"The court instructs the jury that as to all and each one of the duties set forth in instruction No. 1 the plaintiff had the right, in the absence of knowledge or belief to the contrary, to presume and to rely upon the presumption that they had been performed by defendant or its representative with ordinary care; and it was not incumbent upon plaintiff to discover or anticipate and guard against any dangerous condition in said roadbed, tracks, or bridges, which the exercise of ordinary care on the part of defendant would have prevented, unless such condition was either known to plaintiff prior to his alleged injury, or was so open and obvious that it ought to have been known to any one in his situation at the time, had he used his senses. And the court tells the jury that the burden is upon the defendant to prove to the satisfaction of the jury from all the evidence in the case that the plaintiff did in fact have such knowledge, or that the condition of the bridge in question and the danger arising therefrom (if any) was so open and obvious that it ought to have been known to plaintiff had he used his senses."

If, in approaching the bridge, the engineer saw, or could have seen, or had knowledge of the defective condition of the bridge, then, under such circumstances, the doctrine of assumed risk would apply. Under the foregoing instruction, the question as to whether the plaintiff had knowledge of the dangerous condition of the bridge was submitted to the jury, and the jury, by its verdict, determined that question in favor of the plaintiff. We think this instruction fully covered the law bearing upon this phase of the question, and that the court did not err in refusing to submit the instruction tendered by the defendant upon this point. In this instance Estep, the foreman, rode on the front car for the purpose of keeping a lookout and determining as to whether the roadbed was in a safe condition. This fact was well-known to the engineer, and in the performance of his duty he had a

right to rely upon Estep for the faithful performance of his duties in this respect. Under these circumstances, we are of opinion that the doctrine of the assumption of risk does not apply.

It is also insisted that the injury sustained by the plaintiff was due to the negligence of a fellow servant. The court below in overruling a motion to instruct the jury to return a verdict in favor of the defendant clearly and concisely stated the law as respects this point, and, in view of the court's statement, we do not deem it necessary to further discuss this question. That there was evidence as to the failure of the defendant to properly construct its bridge or trestle at this point sufficient to go to the jury is clearly shown by an inspection of the record, and we think the court very properly overruled the motion.

At the conclusion of the evidence, the plaintiff asked leave to amend his declaration so as to allege that the stringer which broke was insufficient, unless properly supported; that, while it was properly supported for a time, by reason of the defendant's negligent failure to make reasonable inspections, it was not properly supported at the time of the accident which caused the injury to the plaintiff. The court permitted this amendment to be made, and the defendant excepted to the same. It is therefore insisted that at that stage of the proceedings, after all the evidence had been offered and the case submitted to the jury, the court was without power to permit such amendment. This action presents two questions for our consideration: (a) As to whether the court, at this juncture, had the power to permit such amendment to be made; (b) whether under the law of Virginia the amendment in question was a proper one.

Section 3384, Code Va. 1904, reads as follows:

"Sec. 3384. Remedy, when at trial variance appears between evidence and allegations or recitals.—If, at the trial of an action, there appears to be a variance between the evidence and allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, on such terms as to the payment of costs or postponement of the trial, or both, as it may deem reasonable. Or, instead of the pleadings being amended, the court may direct the jury to find the facts, and, after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case."

In view of the evidence, the amendment in question was in harmony with the theory upon which the case had been proceeded with up to the time it was allowed, and we think that by the allowance of the same substantial justice was obtained, which leaves open the question as to whether the defendant was prejudiced thereby. The defendant under the well-settled rule of procedure was entitled to have the order made upon terms, and, if it had so desired, it could, upon proper motion, have secured a continuance of the case, and we feel sure that the court below would have ordered a mistrial and required the plaintiff to pay the costs of the term, if a motion to that effect had been made. But no such motion was made, the defendant simply contenting itself with excepting to the action of the court, there being no intimation that it was taken by surprise or that it had any

other or additional evidence to offer in opposition to the contention of the plaintiff as then presented by the amended declaration.

In the case of Langhorne v. Richmond City Ry. Co., 91 Va. 364, 22 S. E. 357, the court, in referring to the provisions of section 3384, said:

"Statutes allowing amendments are favored, and, although resting in the sound discretion of the court, the authorities, without exception, it is said, declare that such statutes are remedial, and must be construed literally. Enc. Pl. & Pr. 516, 517. Section 3384 of the Code was clearly intended to provide for such cases as the one under consideration. By allowing the pleadings to be amended so as to put in issue the identity of the Richmond Railway Company and the defendant company, the whole controversy between the parties could have been settled. By refusing it, the court compelled the plaintiff to take a nonsuit, or to submit to a verdict in favor of the defendant, not upon the merits of the case, but because, as it appeared from the evidence then before the jury, one corporation had done the injury complained of, and another corporation had been sued; and that, too, when the plaintiff was insisting that this was not the fact, but that they were one corporation known by both names, and asking the court for leave to amend his declaration, that he might have an opportunity to introduce evidence to show it. There is no suggestion of laches on the part of the plaintiff in not amending, or asking leave to amend, his pleadings earlier. Neither does it appear that the defendant would have been prejudiced thereby, except in being prevented from taking advantage of the variance between the pleading and proof in the cause, which advantage it was one of the express objects of section 3384 of the Code to prevent."

In the case of Alexandria & F. R. Co. v. Herndon, 87 Va. 193, 12 S. E. 289, the court said:

"(1) The first assignment is that the court below erred in refusing to remand the case to rules, and in allowing the plaintiff to amend at bar, after sustaining the defendant's demurrer to the plaintiff's declaration. We fail to perceive any cause of reversal in the action of the court in this respect. Had the amendment been of such a nature as to render necessary some change in the defense, and a trial had been forced upon the defendant at the same term at which the amendment was allowed, then there would have been ground of complaint. But the amendment consisted merely in striking out of the declaration certain superfluous and immaterial words, and, moreover, the trial was delayed until the succeeding term. It is not only common, but commendable, practice for trial courts to allow amendments in the pleadings at bar without putting the party to the unnecessary trouble and expense of going back to rules, provided the other party is not put to the disadvantage of being forced into trial on new and difficult issues."

The rule is very clearly stated in 1 Enc. Pl. & Pr., p. 564, note 5:

"(7) Summary statement of the rule.—As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony."

In the case of New River Min. Co. v. Painter, 100 Va. 507, 42 S. E. 300, the court among other things said:

"Counsel have not cited, nor have we in our investigation found, any decision of this court which indicates what amendments of the declaration the court may allow after appearance; but there are many decisions upon the question in other jurisdictions. The rule generally prevailing seems

to be that such amendments will be permitted as have for their object the trial and determination of the subject-matter of the controversy upon which the action was originally based, but amendments will not be allowed which bring into the case a new and substantive cause of action, different from that declared on, and different from that which the plaintiff intended to assert when he instituted his action. If the plaintiff in the amended declaration is attempting to assert rights and to enforce claims arising out of the same transaction, act, agreement, or obligation, however great may be the difference in the form of liability as contained in the amended from that stated in the original declaration, it will not be regarded as for a new cause of action. In such cases the original and amended declarations, and the count or counts in each, are regarded as variations in the form of liability to meet the possible scope and varying phases of the testimony, which is one of the very objects and purposes of adding several counts and of making amendments to a declaration. Snyder v. Harper, 24 W. Va. 206, 211; Smith v. Palmer, 6 Cush. [Mass.] 513, 519; Yost v. Eby, 23 Pa. 327, 331."

Here there was no intimation on the part of counsel for the defendant that the defendant was surprised or that it was not prepared to proceed with the trial with the pleadings as amended, and, as we have said, there was no request for a continuance of the case after this amendment was permitted. Under these circumstances, we are of opinion that the action of the lower court does not involve an abuse of judicial discretion.

There are various other assignments of error, all of which we have carefully considered, but we do not deem it necessary to enter into a discussion of them, inasmuch as the disposition of the points that we have discussed clearly determines the matter at issue in this controversy. Some of these assignments relate to the refusal of the court below to charge certain propositions of law as requested by the defendant, and some of them relate to the charge as given by the court. We think that the judge very properly refused to give the instructions submitted by the defendant, and it should be remembered that in many instances these instructions were substantially given by the court in its charge and the others were not justified in view of the pleadings and evidence; and the charge of the court, taken as a whole, clearly states the law bearing upon the questions involved herein.

We are therefore of the opinion that the rulings of the lower court upon the various questions presented are correct; and, failing to find that the court below committed any error prejudicial to the rights of the defendant, the judgment of that court is affirmed.