Argued May 4, affirmed May 18, rehearing denied June 15, 1915.

# MORGAN *v.* GRANDE RONDE LUMBER CO.*

### (148 Pac. 1122.)

**Master and Servant—"Railroad" Employees.**

1. The word "railroad" in Section 6946, L. O. L., making every corporation operating a railroad liable for injuries sustained by employees by the default of coemployees, includes a logging railroad used exclusively by the owner.

> [As to kind of railroad intended by rule abrogating fellow-servant doctrine as to railroad employees, see note in Ann. Cas. 1912D, 648.]

**Master and Servant—Injury to Servant—Evidence.**

2. Where a section-hand on a logging railroad was ordered to assist in loading a train, and when the loading was completed, the foreman directed the men to get aboard, the section-hand while on the train, was entitled to protection as such.

**Master and Servant—Injury to Servant—Contributory Negligence.**

3. Whether a section-hand on a logging railroad was guilty of negligence in riding on a logging train, by orders of the foreman, *held*, for the jury.

**Master and Servant—Injury to Servant—Contributory Negligence.**

4. Whether a section-hand was negligent in riding with his feet hanging over the edge of a flat car in a logging train, in violation of orders *held*, for the jury.

**Master and Servant—Injury to Employee—Contributory Negligence.**

5. Whether an employee on a logging train, running away on a down grade, was guilty of contributory negligence in jumping from the train, *held*, under the evidence, for the jury.

**Master and Servant—Injury to Servant—Care of Employer.**

6. An employer, maintaining a logging railroad and carrying employees to load logging trains, must use reasonable precautions to protect them from injury.

**Master and Servant—Injury to Servant—Care Required of Employer.**

7. Whether an employer maintaining a logging railroad and operating thereon logging trains was guilty of negligence in failing to maintain the track in a reasonably safe condition and to furnish a locomotive properly equipped, *held*, for the jury.

## From Union: JOHN W. KNOWLES, Judge.

---

*As to applicability to private railroad of statutes abrogating the fellow-servant rule as to railroads, see notes in 15 L. R. A. (N. S.) 479 and 45 L. R. A. (N. S.) 841.

As to whether street or interurban railways are within the meaning of statutes abrogating the fellow-servant rule as to railroads, see note in 17 L. R. A. (N. S.) 117.    REPORTER.

In Banc.   Statement by Mr. Justice McBride.

This is an action by Peter Morgan against the Grande Ronde Lumber Company, a corporation, to recover for personal injuries. The testimony on behalf of plaintiff shows the following facts: Defendant, at the times mentioned in the complaint, operated a sawmill at Perry, Oregon, and in connection therewith operated a railroad from a point near Hilgard, Oregon, to a point in the Blue Mountains about 15 miles distant. About 10 miles out from Hilgard was located one of its logging camps. The defendant used this railroad for the purpose of hauling logs from the mountains to Hilgard, and thence over the Oregon-Washington Railroad & Navigation tracks to Perry. Plaintiff was employed by defendant as a section-hand upon its railroad. In performing the work plaintiff rode upon defendant's cars, sometimes as a matter of necessity in carrying on the work, sometimes as a matter of convenience, but at all times with the knowledge and permission of defendant. On the 8th day of June, 1913, defendant sent a train, consisting of an engine and two flat cars, over a part of its track about six miles long, from its camp in the mountains, to where was piled some ties and a small house, all of which were to be loaded upon the train. Plaintiff, as a section-hand, rode upon that train and helped load the ties. There had not been a train over this track since about the 10th of January, 1913. There had been no inspection of this track prior to this train going over it. Plaintiff's testimony is to the effect that grass had grown quite high over this track. Defendant, by its witnesses, denied this fact. It further appeared that the engine which took this train over this track was sanded the night before at Perry; that the only place where

the company kept sand for its engines was at Perry. After the ties and house were loaded upon the cars, the foreman in charge of the train shouted, "All aboard," and all but two of the men got on the cars. It further appears in the testimony that the engineer in charge of the train was not the regular man on the run, but was regularly a brakeman or a conductor, and handled the engine in switching, having often taken it over the track where the accident occurred. He had handled it for several years, but no other engines. The grade upon this road at the place of plaintiff's injury was about 5 per cent, and there were places on the road where the grade was much greater. After the men had boarded the train, the foreman gave the sign for starting out. The engineer started the train and went about five or six car-lengths, when he lost control and shouted to the foreman to jump off, and the foreman shouted, "Jump off," and the men began to jump off. Plaintiff jumped, and, in some manner unknown to himself, was thrown beneath the cars and had both legs crushed, so that one had to be amputated about seven inches below the knee, and the other foot was taken off. There was a verdict and judgment for plaintiff, from which defendant appeals.

Affirmed.      Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. Charles H. Finn.*

For respondent there was a brief with oral arguments by *Messrs. Cochran & Eberhard.*

Mr. Justice McBride delivered the opinion of the court.

1. As a preliminary question in this case it is urged by defendant that the term "railroad," used in Sec-

tion 6946, L. O. L., does not apply to logging roads used exclusively for the purposes of the owner and not possessing the attributes of common carriers. The case was tried by plaintiff upon the theory that it was one within this statute, which to a great extent eliminates the defense of assumption of risk, and imposes other duties upon the employer beyond those existing at common law. The section referred to reads as follows:

"Every corporation operating a railroad in this state, whether such corporation be created under the laws of this state, or otherwise, shall be liable in damages for any and all injury sustained by any employee of such corporation as follows: When such injury results from the wrongful act, neglect, or default of an agent or officer of such corporation, superior to the employee injured, or of a person employed by such corporation having the right to control or direct the services of such employee injured, or the services of the employee by whom he is injured; and also when such injury results from the wrongful act, neglect, or default of a coemployee engaged in another department of labor from that of the employee injured, or of a coemployee on another train of cars, or of a coemployee who has charge of any switch, signal point, or locomotive engine, or who is charged with dispatching trains or transmitting telegraphic or telephonic orders. Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways, appliances, or structures of such corporation shall not of itself be a bar to recovery for any injury or death caused thereby. When death, whether instantaneous, or otherwise, results from an injury to any employee of such corporation received as aforesaid, the personal representative of such employee shall have a right of action therefor against such corporation, and may recover damages in respect thereof. Any contract or agreement, express or implied, made by any such employee to waive the benefit of this section, or any part

thereof, shall be null and void, and this section shall not be construed to deprive any such employee, or his personal representative, of any right or remedy to which he is now entitled under the laws of this state.''

It will be seen that the statute in its terms is broad enough to include all railroads. Its evident object is to protect employees from the dangers incident to the operation of locomotives and trains; and this danger is even greater upon logging railroads than upon those which are used as common carriers, so that there would seem no good reason to make a distinction by construction where the law has made none by its language. This view is supported by the great weight of authority: *Keystone Mills* v. *Chambers* (Tex. Civ. App.), 118 S. W. 178; *Hemphill* v. *Buck Creek Lumber Co.,* 141 N. C. 487 (54 S. E. 420); *Lodwick Lumber Co.* v. *Taylor,* 39 Tex. Civ. App. 302, 87 S. W. 358; *Carter* v. *Coharie Lumber Co.,* 160 N. C. 8 (75 S. E. 1074); *Mace* v. *Boedker,* 127 Iowa, 721 (104 N. W. 475); *Kline* v. *Minn. Bridge Co.,* 93 Minn. 63 (100 N. W. 681); *Cunningham & Co.* v. *Neal,* 101 Tex. 338 (107 S. W. 539, 15 L. R. A. (N. S.) 479).

2. It is next contended that the plaintiff was not injured while in the employ of the company, but that, his day's work having been completed when the cars were loaded, his duty to his employer and the employer's duty to him ceased, and that if he elected to ride home on the car instead of walking he did so at his own risk. This contention is not borne out by the facts. The testimony shows that plaintiff was regularly employed by the defendant at a wage of $2.25 a day, and had been so employed for several months; that he was a section-hand and was ordered to go out upon the train to assist in loading it with ties which were piled at the end of the track several miles

away in the mountains; that the track had not been used for several months, and was in such condition that it had to be repaired at one or two places to render it passable; that when the loading was completed the foreman directed the men to get aboard, and the plaintiff and all the others but two did so. There is nothing to indicate that his employment had ceased when the ties were loaded. He was under pay and in the employment of the company when he went out to his work, and was still under pay and in its employment when he got on the car to return. It is true he might have walked through the woods, and as events proved it would have been better for him to have done so, but it would have been an unusual and extraordinary act under the circumstances. Two out of the 18 men who composed the crew did in fact walk home, but they were probably familiar with the dangers of the road, while the testimony shows that plaintiff had not been over that portion of it before the day of the accident.

Several assignments of error are made in the brief, all relating to the contributory negligence of plaintiff. They may be grouped as follows: (1) That he was negligent in riding upon the car instead of walking home: (2) that he was negligent in riding with his feet hanging over the edge of the flat car; (3) that he was negligent in not remaining on the car instead of jumping off.

3. To the first objection it may be answered that it was a matter for the jury to determine whether he knew or appreciated the danger to which he was exposed, and voluntarily assumed it when he obeyed the directions of the foreman and went upon the car; and upon that circumstance they have, by their verdict, found in favor of the plaintiff. To a common laborer,

unfamiliar with the operation of a locomotive or with railroad operation of any kind, a danger which would be obvious to a skilled engineer might not be apparent, and he had a right to assume that the company had furnished a locomotive sufficiently equipped and with power enough to prevent its running away upon the heavy grades known to exist upon this portion of the road, and with an engineer possessing sufficient knowledge and caution to see that the equipment was kept in order and properly used. There was a question as to the competency of the engineer, and also a question as to whether there was a sufficient amount of sand in the sand boxes and dome; and the jury had a right to find, and probably did find, that plaintiff's theory that the running away of the train was caused by the failure to apply sand enough to overcome the slippery condition of the rails was correct.

4. As to the second suggestion that the plaintiff was negligent in assuming the position which he did upon the car, it is clear that this was purely a question of fact for the jury. The foreman testifies that he had ordered all the employees not to ride in this manner. The plaintiff denies that any such direction or caution was ever given him, and it was a question for the jury as to which witness was to be believed. But conceding that the direction had been given, the jury were the final judges as to whether plaintiff's disobedience of the order contributed in any way to his injury.

5. The suggestion that plaintiff was negligent in jumping was for the jury. The foreman jumped and ordered the men to jump, and all including the engineer did jump except two. The general judgment seems to have been that it was safer to jump than to stay on the train and take chances in the inevitable smash-up. Plaintiff found himself in a position of sudden and im-

minent peril, where it was necessary for him to choose
between two dangerous courses of action, and it was
for the jury to say whether he acted with ordinary
prudence under the circumstances: *Kleiber* v. *People's
R. Co.*, 107 Mo. 240 (17 S. W. 946, 14 L. R. A. 613, and
cases there cited).

6, 7. There was evidence of defendant's negligence
sufficient to justify the verdict of the jury. It is true
that much of the evidence of plaintiff's witnesses was
contradicted by the defendant; but where there is any
substantial testimony to justify a verdict, and a verdict
is rendered in accordance with it, we must assume
such testimony to be true. Therefore we must as-
sume that the track where the accident happened was
overgrown with grass, which, when mashed down upon
the track, caused it to become slippery; that there was
a deficiency of sand so that sufficient traction could
not be obtained to hold the train and prevent its run-
ning wild. It was the duty of defendant to furnish
plaintiff a reasonably safe place to work, which in-
cludes a reasonably safe track and locomotive properly
supplied and equipped while going to and returning
from the place where the actual physical labor was
to be performed. Defendant had a right to require
its employees to walk to and from their labors—it was
"all in the day's work"—but when for its own con-
venience, or theirs, or both, it undertook to carry them,
it should have used reasonable precautions to protect
them from injury, and what is a reasonable precaution
is to be judged by all the circumstances, and is a ques-
tion of fact for the jury. Of course, nobody could
expect the same elaborate care upon a logging road,
which is temporary in its character, as upon a road
largely used for commercial purposes; but such pre-
cautions as furnishing competent engineers, removing

obvious dangers from the vicinity of the rails, seeing that sand, which is so necessary when negotiating heavy grades, is supplied in sufficient quantities, are duties which cannot be disregarded even when the structure is only temporary. There was evidence tending to show that the defendant was derelict in some, if not all, of these respects; and, while it might not satisfy every member of the court if they were sitting as triers of the facts, it did satisfy the jury; nor is it weak when the whole circumstances are considered. According to defendant's testimony the locomotive was all right, the brakes were all right, the engineer was competent, there was plenty of sand, and the track was free of weeds; and yet before the train had gone a hundred feet it got beyond control and ran away, and the only reason or excuse offered is that there had been a shower of a few minutes' duration which had made the track slippery. Jurors are likely, under these circumstances, to conclude that the reason given is not adequate to account for the accident, and to decide that the plaintiff's theory of an overgrown track, lack of sand, and an inexperienced engineer more reasonably accounts for its occurrence.

By reason of the statute the doctrine of assumption of risk is not in this case, and a discussion of that subject is unnecessary.

Taken as a whole, the charge of the court was exceedingly fair to the defendant, and fully and correctly stated the law. Finding no material error, the judgment is affirmed.    AFFIRMED.    REHEARING DENIED.