REGAN, Appellant, *v.* MONTANA LOGGING CO., Respondent.

(No. 3,711.)

(Submitted November 27, 1916. Decided January 10, 1917.)

[162 Pac. 388.]

*Personal Injuries—Master and Servant—"Railroad"—Logging —Statutes—Construction.*

Personal Injuries—Master and Servant—"Railroad"—Logging.

1. *Held,* that the word "railroad" as used in Chapter 29, Laws of 1911, making every person or corporation operating a railroad liable for injuries sustained by employees through the negligence of his or its officers, agents or employees while operating the road, includes a road used for logging purposes.

Same—Operation of Railroad—What Constitutes.

2. Plaintiff, a brakeman on defendant's logging road, was also required to assist in loading and unloading cars; while doing so he was injured by the breaking of an appliance. *Held* that defendant company was "operating" its road at the time of the injury, within the meaning of Chapter 29, Laws of 1911.

Statutes—Remedial Legislation—Construction.

3. Remedial legislation should not be limited by a narrow construction.

*Appeal from District Court, Missoula County; John E. Patterson, Judge.*

————

On applicability to private railroad of statute abrogating or modifying the fellow-servant rule as to railroads, see notes in 15 L. R. A. (n. s.) 479; 45 L. R. A. (n. s.) 841.

ACTION by Joe Regan against the Montana Logging Company. Judgment for defendant on demurrer to the complaint, and plaintiff appeals. Reversed and remanded, with directions to set aside the judgment and overrule the demurrer.

Submitted on briefs of counsel.

*Mr. Harry H. Parsons* and *Mr. Derwood Washington,* for Appellant.

A logging railroad comes within the purview and meaning of Chapter 29, Laws of 1911. (*O'Rear* v. *Manchester Lumber Co.,* 6 Ala. App. 461, 60 South. 462; *Bissell* v. *Greenleaf-Johnson Lumber Co.,* 152 N. C. 123, 67 S. E. 259; *Roberson* v. *Greenleaf-Johnson Lumber Co.,* 154 N. C. 328, 70 S. E. 630; *Long Pole Lumber Co.* v. *Gross,* 180 Fed. 5, 103 C. C. A. 359; *Morgan* v. *Grande Ronde Lumber Co.,* 76 Or. 440, 148 Pac. 1122; *Sullivan-Sanford Lumber Co.* v. *Watson,* 106 Tex. 4, 155 S. W. 179; *Receivers of Kirby Lumber Co.* v. *Lloyd,* 103 Tex. 153, 124 S. W. 903.) In addition to the above cases, we invite attention to *Schus* v. *Powers-Simpson Co.,* 85 Minn. 447, 69 L. R. A. 887, 89 N. W. 68, and incidentally *Papkovich* v. *Oliver Iron Mining Co.,* 109 Minn. 294, 123 N. W. 824.

Was the plaintiff at the time of his injuries engaged in the handling or operation of any train or car on or over such railroad? "Operating" a railroad or a car connotes something more than the mere running or moving of the same. (*Freeman* v. *Shaw,* 59 Tex. Civ. App. 294, 126 S. W. 53; *Glover* v. *Houston etc. R. Co.* (Tex. Civ. App.), 163 S. W. 1063; *Cahill* v. *Illinois Cent. Ry. Co.,* 148 Iowa, 241, 28 L. R. A. (n. s.) 1121, 125 N. W. 331; *Mace* v. *H. A. Boedker & Co.,* 127 Iowa, 721, 104 N. W. 475; *Rhodes* v. *Matthews,* 67 Ind. 131; *Cumming* v. *Brooklyn City R. Co.,* 104 N. Y. 669, 10 N. E. 855.) "Operating" a railway does not mean alone using or moving its rolling stock; it applies to such of the works and plant as are necessary as well (*Central Trust Co.* v. *Condon,* 67 Fed. 84, 14 C. C. A. 314); or the running of a single engine (*Larson* v. *Illinois Cent.*

*R. Co.*, 91 Iowa, 81, 58 N. W. 1076) ; or applies to those putting in roadbed or bridges. (*Callahan* v. *St. Louis Merchants etc. R. Co.*, 170 Mo. 473, 94 Am. St. Rep. 746, 60 L. R. A. 249, 71 S. W. 208; see, also, *Miller* v. *Minnesota etc. R. Co.*, 76 Iowa, 655, 14 Am. St. Rep. 258, 39 N. W. 188; *Ean* v. *Chicago, M. & St. P. R. Co.*, 95 Wis. 69, 69 N. W. 997.)   The business of the defendant is alleged to have been that of lumbering and logging with its railroad. If it was operating the railroad, then of necessity must the plaintiff have been participating in the operation. He was under the charge of a foreman, a brakeman on the train, and assisting in loading the logs at the time complained of. He was assisting, in any event, in operating the train, or at least in handling the car. The operating or handling of any car has been held in *Missouri, K. & T. Ry. Co.* v. *Bailey*, 53 Tex. Civ. App. 295, 115 S. W. 601, to apply to even a handcar. (3 Elliott on Railroads, 1354; *San Antonio & A. P. R. Co.* v. *Stevens*, 37 Tex. Civ. App. 80, 83 S. W. 235; *Chicago, M. & St. P. R. Co.* v. *Artery*, 137 U. S. 507, 34 L. Ed. 747, 11 Sup. Ct. Rep. 129; *Kansas City etc. R. Co.* v. *Crocker*, 95 Ala. 412, 11 South. 262.)

*Mr. Henry C. Stiff*, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for personal injuries sustained by the plaintiff during the course of his employment by the defendant. The district court sustained defendant's demurrer to the complaint and rendered judgment for defendant. The plaintiff has appealed.

The defendant, Montana Logging Company, a corporation, is engaged in lumber milling and logging. It is the owner of a logging railroad with the equipments of engines, cars, and other appliances necessary to enable it to carry logs from the forest to its mill and to carry back persons and materials when occasion arises. At places where logs are loaded upon the cars, it

has provided appliances, such as chains, hooks, hoists and other devices, suitable to facilitate the work of loading. At the time of the injury the plaintiff was employed as a brakeman. It was a part of his work to assist in loading and unloading cars. He was at this time assisting in the loading of a car. The logs were placed in layers or tiers lengthwise of the car and were held in place by chains. To prevent them from spreading as the loading proceeded, the defendant had provided a device known as and called a "gin-pole." This consisted of a pole from six to eight inches in diameter, standing in a hole on the ground at the side of the car and about midway between its ends. The top of the pole was held by a chain which extended, and was fastened, to the reach of the car. The logs were loaded between the reach and the pole. As the several layers were put in place, the resistance of the gin-pole was relaxed by releasing and readjusting the chain holding it. The pole was thus held at any angle which was required in order that the load might be built to the height desired. The logs were lifted to the car by means of a hoist which was operated by an engine. They were raised, lowered or turned by means of a metal cable armed at the end with a pair of hooks or tongs which closed when the cable was drawn tight. The foreman in charge of the operations was one Fitzpatrick. The plaintiff was wholly subject to his control and directions. On the day in question, the plaintiff and other employees of defendant were working under the direction of Fitzpatrick. They had covered the deck of the car with two and one-half tiers of logs, leaving a space between these logs and the gin-pole. There was being lifted to the car a large log which it was desired to have placed in the space mentioned. This space being too narrow to receive the log, the latter rested against the gin-pole. Fitzpatrick undertook to hold the log by means of a peavy or cant-hook while the plaintiff under his direction released the chain holding the gin-pole in order to permit the log to roll in place. The plaintiff released the gin-pole, whereupon, the foreman being unable to hold the log, it rolled away and broke the gin-pole, throwing it against the

plaintiff, inflicting the injuries complained of.  After reciting the foregoing facts, the complaint alleges:

"VIII.  That the said gin-pole, as so placed in said hole or excavation, was wholly and altogether unable and too weak to stand the pressure of any logs, or any log, falling or rolling upon it when said chains were not taut, and said defendant, well knowing all of the facts herein mentioned and complained of, negligently failed and refused to make said hole or socket reasonably safe, and carelessly and negligently kept and maintained the said system and socket in said unsafe, negligent and insecure manner and fashion.

"IX.  That there was no means save by the use of one's hands to release or slacken the ends of said chain around said gin-pole, and the defendant negligently and carelessly omitted and failed to furnish or provide plaintiff with any reasonably safe method or appliances with which to slacken, lessen, release or readjust said chain.

"X.  That each and all of the acts, orders and commands herein enumerated and set forth were careless and negligent, but particularly were the defendant and said foreman negligent and careless: (1) In not holding said big log in place by the hooks and tongs while plaintiff was attempting to adjust and fasten said gin-pole; (2) in trying to hold the same in place by a cant-hook or peavy; (3) in having but one gin-pole to attempt to hold back and stand the pressure of said logs so loaded; (4) in not having the said gin-pole more deeply and securely fastened in the ground, so that the same would not give way to the pressure of one log resting or tumbling against it; (5) in giving plaintiff the said command and order to release said chain under the circumstances and situation then existing; (6) in not using reasonable care to provide and furnish plaintiff with a reasonably safe place in which to work and perform his duties at said time; (7) in not furnishing him with a reasonably safe place, means and with reasonably safe appliances with which to release and recatch the said chain in the performance of his said duties; (8) that the said gin-pole fell because of the negli-

gence aforesaid [the same], and the said log rolled and fell upon and hit the plaintiff violently, throwing him to the ground.'' Then follow a description of plaintiff's injuries and demand for judgment.

The demurrer was general and special. The vital questions [1] presented by the general ground of the demurrer are: Whether the road described in the complaint is a railroad within the meaning of Chapter 29 of the Laws of 1911 (sec. 1, p. 47); and, if so, whether the complaint states a cause of action under it; or, in other words, whether the car was being moved or handled at the time the plaintiff was injured. This provision declares: ''Every person or corporation operating a railroad in this state shall be liable in damages to any person suffering injury while he is employed by such person or corporation so operating any such railroad, or, in case of the death of such employee, instantaneously or otherwise, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent, upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such person or corporation so operating such railroad in or about the handling, movement or operation of any train, engine or car, on or over such railroad, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

A solution of the first inquiry depends upon whether the statute includes within its scope only commercial railroads, as such, or includes also roads the primary purpose of which is use in connection with a private business or enterprise. It is evident that the purpose of the legislature in enacting it was to furnish protection to those employed in the hazardous business of operating locomotives and trains and handling cars upon roads constructed of rails, without regard to who the owner of them may be or the scope or character of the enterprise to which their use

is devoted; for the language is broad and comprehensive, without exception, expressed or implied, in the words employed in it.  There is no room for the distinction suggested by counsel for defendant that the road referred to in the pleading is a mere instrumentality of the larger and principal industry of manufacturing lumber and does not come within the purview of the statute.  Legislation of the same character has frequently been before the courts in other jurisdictions, and the current of authority supports the view that its scope cannot be narrowed or limited by construction to exclude any means of transportation which may be- designated as a railroad.  Construing a similar provision in *Morgan* v. *Grande Ronde Lumber Co.*, 76 Or. 440, 148 Pac. 1122, the supreme court of Oregon said: ''It will be seen that the statute in its terms is broad enough to include all railroads.  Its evident object is to protect employees from the dangers incident to the operation of locomotives and trains; and this danger is even greater upon logging railroads than upon those which are used as common carriers, so that there would seem no good reason to make a distinction by construction where the law has made none by its language.''  The following cases are in point: *Bissell* v. *Greenleaf-Johnson Lumber Co.*, 152 N. C. 123, 67 S. E. 259; *Sawyer* v. *Roanoke R. & Lumber Co.*, 145 N. C. 24, 58 S. E. 598; *Sullivan-Sanford Lumber Co.* v. *Watson*, 106 Tex. 4, 155 S. W. 179; *Cunningham* v. *Neal*, 101 Tex. 338, 15 L. R. A. (n. s.) 479, 107 S. W. 539; *Betterly* v. *Boyne City etc. Ry. Co.*, 158 Mich. 385, 122 N. W. 635; *Blomquist* v. *Great Northern Ry. Co.*, 65 Minn. 69, 67 N. W. 804; *Kline* v. *Minnesota Iron Co.*, 93 Minn. 63, 100 N. W. 681; s. c., *Minnesota Iron Co.* v. *Kline*, 199 U. S. 593, 50 L. Ed. 322, 26 Sup. Ct. Rep. 159; *Long Pole Lumber Co.* v. *Gross*, 180 Fed. 5, 103 C. C. A. 359.

Was the defendant, at the time the plaintiff was injured. [2]  engaged in the operation of the railroad, within the meaning of the statute?  The liability declared by it attaches to the owner operating a railroad, in favor of an employee injured through the negligence of any officer, agent or employee of the

owner "in or about the handling, movement or operation of any train, engine or car, on or over any such railroad, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, * * * or other equipment." If we bear in mind that the purpose of the legislation is as we have said, to protect the employees from injuries incident to the employment, the conclusion seems inevitable that the language quoted is broad enough to include an injury to one employed in any capacity by another employee in the same or a different capacity, in the accomplishment of any kind of service without which the complex process of operation cannot go on. Trains cannot be moved unless the roadbed, rolling stock, and other appliances are kept in repair. Cars must be loaded and unloaded; otherwise transportation cannot go on. Other tasks of similar nature must be done, the doing of which involves the risk of dangers peculiarly incident to railroads because of the character of the services required and the instrumentalities employed. So it is held that such a statute includes repairs to the track as a part of the process of operation (*Blomquist* v. *Great Northern Ry. Co., supra*), the work of unloading metal crossings or frogs from a car by means of a derrick (*Glover* v. *Houston etc. Ry. Co.* (Tex. Civ. App.), 163 S. W. 1063), the unloading of gravel from a gravel-car (*McKnight* v. *Iowa & M. R. Const. Co.*, 43 Iowa, 406), the loading of dirt upon cars from a bank (*Deppe* v. *Chicago etc. Co.*, 36 Iowa, 52), the moving of a hand-car by section-men by hand power (*Mikesell* v. *Wabash R. Co.*, 134 Iowa, 736, 112 N. W. 201), the unloading of ties from a car as it was being moved from place to place by hand (*Freeman* v. *Shaw*, 59 Tex. Civ. App. 294, 126 S. W. 53), the coupling and uncoupling of cars (*Schus* v. *Powers-Simpson Co.*, 85 Minn. 447, 69 L. R. A. 887, 89 N. W. 68), the pushing of a freight-car to a freight-house by a freight handler (*Ean* v. *Chicago, M. & St. P. Ry. Co.*, 95 Wis. 69, 69 N. W. 997), and riding on a hand-car while it is being moved along the roadway, by hand power by section-hands returning from their work (*Chicago, M. & St. P. R. Co.* v. *Artery*, 137

U. S. 507, 34 L. Ed. 747, 11 Sup. Ct. Rep. 129). These are some of the instances which are held to be included within the scope of such legislation, and support the view expressed above that any part of the work connected with the railroad which necessarily and directly contributes to the operation of it, or the handling or movement of any train, engine, or car on or over it, comes within its scope.

The legislation is remedial in its nature, and its operation [3] ought not to be limited by narrow construction. Doubtless cases will arise to which the statute has no application, and recovery may be had, if at all, only under the limitations of the common-law rule. The service being performed may be so remotely connected with the process of operation that it cannot by any intendment be deemed a part of it. Each case must be determined upon its own facts. The facts alleged in the complaint we think make out a *prima facie* case of liability. The objections presented under the general ground of the demurrer should have been overruled.

The special grounds of objection urged are that the complaint is ambiguous, uncertain and unintelligible in various particulars stated. Though the pleading is not a model of clarity and succinctness in statement, it is not open to attack for vice in the particulars alleged. The district court is directed to set aside the judgment and overrule the demurrer.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.