MORELLI, Appellant, v. GREAT NORTHERN RAILWAY
CO. et al., Respondents.

(No. 6,745.)

(Submitted April 14, 1931.   Decided May 8, 1931.)

[300 Pac. 210.]

604

*Mr. C. A. Spaulding* and *Mr. Victor R. Griggs,* for Appellant, submitted a brief; *Mr. Spaulding* argued the cause orally.

*Mr. W. L. Clift* and *Mr. R. H. Glover,* for Respondents, submitted a brief; *Mr. Clift* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

John Morelli has appealed from a judgment of nonsuit entered against him on motion of the defendants in a personal injury action brought by him against the Great Northern Railway Company and James E. Martin, its roundhouse foreman at Havre, Montana.

The questions raised by the motion for nonsuit and by this appeal are as to the sufficiency of the complaint to state a cause of action, whether or not the record discloses a duty laid upon the defendants to protect the plaintiff, as a servant, in the manner and under the circumstances set out in the complaint, and as to the sufficiency of the evidence to require a submission of the cause to the jury.

The complaint alleges that plaintiff was a boilermaker in the employ of the defendant company and working

under the supervision of defendant Martin, and that his duties required him at times to enter the fire-boxes of engines to make repairs and therein to use an air-hammer provided by the defendants. It is then alleged that "it was the duty" of the defendants to provide the plaintiff with a reasonably safe place in which to work and to supply him with reasonably safe tools and appliances with which to perform his duties and, in the performance of that duty, it was "necessary" that defendants provide plaintiff with goggles so constructed that they could be worn while using the air-hammer and which would reasonably protect plaintiff's eyes from flying pieces of metal resulting from the use of the hammer. It is then alleged that plaintiff was required to enter the fire-box of an engine which was in a "very heated condition," there to calk certain stay-bolts, under which condition only goggles equipped with fine screen lenses or lenses of glass properly ventilated "can be worn"; but that, instead of furnishing such goggles, defendants negligently and carelessly provided plaintiff with a pair of goggles "equipped with glass lenses encased in so-called leather side shields, fitting closely to the cheek and temple, and without ventilation to permit air to pass between the lenses and the eyes," on account of which and the heated condition of the fire-box "moisture gathered upon the lenses, * * * rendering them unusable," and that the accident complained of was due to and caused by the negligence of defendants in not providing plaintiff a reasonably safe place in which to work and with proper goggles. It is further alleged that defendants knew, or by the exercise of reasonable care should have known, that in the heated fire-box and in the work to be performed, plaintiff's eyes were in danger from flying bits of steel, and that the goggles furnished could not be worn under the conditions existing.

In describing the injury received, plaintiff alleges that, on August 12, 1926, in the course of his duties, he was required to enter the heated fire-box of an engine for the purpose of calking stay-bolts by the use of the air-hammer, and before the operation was fully performed and "at a point where it

was impossible for plaintiff to cease using said hammer'' by reason of the conditions described, the goggles furnished clouded over, so that it was impossible for plaintiff to use them and he was compelled to remove them in order to complete the work, as a result of which a piece of steel struck him in the left eye, resulting in a total loss of sight of the left eye and great impairment to the sight of the right eye.

The answer denies that defendant company was in duty bound to furnish plaintiff with goggles or that he was ordered or directed to enter the fire-box while it was still in an overheated condition, and alleges that if such was the condition, he should have waited until it had cooled off sufficiently to enable him to work with greater ease and comfort, and that the overheated condition of the fire-box was not a proximate cause of any injury sustained by plaintiff. It alleges that the rules of the company require boilermakers, while engaged in such work, to wear goggles and that plaintiff violated its rules in removing his goggles while using an air-hammer, and that the goggles in question "had been personally selected" by plaintiff.

As separate defenses, defendants allege assumption of risk and contributory negligence, and further that the injury resulted proximately and solely from plaintiff's careless and reckless operation of the air-hammer without goggles, in violation of the rules and regulations of the company. Issue was joined by reply.

1. While the mere conclusions of the pleader that certain duties devolved upon the defendants amount to nothing, the complaint contains allegations as to the conditions under which plaintiff is alleged to have been required to work and the necessities thereunder, which, if as a matter of fact it was the duty of the defendants to furnish goggles, render the complaint sufficient. (*Johnson* v. *Herring,* 89 Mont. 156, 295 Pac. 1100.)

2. There is no question but that it is the duty of the master to furnish the servant with a reasonably safe place in which to work and with reasonably safe tools and appliances

with which to perform the duties imposed upon him. But the heated condition of the fire-box added no element of danger to the work being performed, other than the generation of steam causing moisture to collect on the lenses of the workman's goggles, and this condition is shown only in connection with the alleged duty to furnish a type of goggles which would not readily yield to this condition. The question raised is whether or not "goggles" are "tools and appliances" within the meaning of the general rule, or "appliances, machinery" within the meaning of section 6605, Revised Codes 1921.

The authorities generally declare the negative, but we need not here decide the question. (See *Burns* v. *Delaware Tel. Co..* 70 N. J. L. 745, 67 L. R. A. 956, 59 Atl. 220; *Emerson-Brantingham Co.* v. *Growe,* 191 Ind. 564, 133 N. E. 919; *Stapleton* v. *Reading Co.,* 26 Fed. (2d) 242; *Kolbow* v. *Haynes-Langenburg Co.,* (Mo. App., not reported), 3 S. W. (2d) 226; 4 C. J., "Appliances," 1379.)

Conceding for the purposes of this opinion, but not deciding, that, either on general principles or, having furnished goggles for two years, the duty devolved upon defendants to furnish plaintiff with reasonably safe goggles, does the record disclose facts showing a breach of that duty and that such negligence ·was the proximate cause of plaintiff's injury?

3. The testimony on behalf of plaintiff is to the effect that ▇▇ the rules of the company required boilermakers to wear goggles while using the air-hammer on steel, which rule was well known to plaintiff, and that for two years the company had furnished the men with goggles; that it had changed the type from time to time in an effort to secure the best type; that all known types would accumulate moisture under such conditions as those described in the complaint, and the wearers were frequently compelled to wipe the lenses off with their handkerchiefs. This had been the experience of plaintiff with the goggles he had worn prior to receiving those of which complaint is made, the former being similar to the latter except that the side shields were perforated for ventilation.

On August 10, 1926, the string attached to plaintiff's goggles for the purpose of holding them in place pulled out of the side shield. It appears that the string was attached to the shield by passing through a hole, a knot being tied in the end; the knot pulled through; the goggles were otherwise in perfect condition, although the string was worn. Plaintiff turned the goggles in at the storeroom and was given those described in the complaint; he complained that they were "no good," but was told that they were all the company had on hand.

Plaintiff used the new goggles two days. He testified that he found them "no good" as they "frosted too quick." But, detailing the circumstances of the accident, he testified that he was engaged in calking the stay-bolts in the fire-box of an engine for a period of from twenty-five to thirty minutes, during all of which time he wore the new goggles. His testimony contains no suggestion that the condition of the goggles interfered with his work during that period or that he was compelled to remove them even once and wipe them off. At the end of the period he thought he was through with the job and ceased working to inspect it. Finding the goggles steamed up he pushed them to his forehead. He found one bolt that was not quite drawn up and which required an additional stroke of the hammer. The hammer operated by means of pressure of the thumb upon the "trigger"; when the pressure was withdrawn, the air was cut off and the hammer ceased working. Manifestly, when plaintiff ceased working to inspect the job, he released the pressure on the trigger of his hammer.

This evidence contradicts, rather than proves, the allegations of the complaint to the effect that it was impossible to work with the goggles furnished and that it was impossible to stop the operation of the hammer until the job was completed and, consequently, that by reason of the condition of the goggles plaintiff was forced to complete the job without goggles. It would have been a simple matter, in conformity with past custom and experience, to have wiped the moisture from the lenses and re-adjusted the goggles before re-applying

pressure to the trigger of the hammer for the purpose of correcting the condition of the one bolt.

Plaintiff testified that he did not think there was any danger of splinters of steel flying from the particular bolt at that time, as the danger comes from striking a rough bolt head in the early stages of such an operation and, consequently, he applied the hammer, giving the bolt a single stroke. Contrary to his expectation a small particle of steel flew off of the bolt head and into his eye. Clearly, the proximate cause of the injury was shown to be, not the negligence of the defendants in furnishing plaintiff defective goggles, if they were defective, but plaintiff's failure to re-adjust his goggles before recommencing work with his air-hammer, in disregard of the rules of his employer.

Plaintiff, therefore, failed to prove an essential allegation of his complaint, and the judgment rests on this fatal defect in plaintiff's case rather than on any showing of contributory negligence or assumption of risk. The contention that under the Employers' Liability Act (secs. 6605–6608, Rev. Codes 1921) neither contributory negligence nor assumption of risk is a bar to such an action when actionable negligence attributable to the employer is shown, need not be considered.

Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.