PALMER, RESPONDENT, v. GREAT NORTHERN RY. CO., APPELLANT.

No. 8563

Submitted April 12, 1946. Decided June 28, 1946.

170 Pac. (2d) 768

Messrs. Weir, Clift & Bennett and Mr. Newell Gough, all of Helena, for appellant.

Mr. E. J. Stromnes and Messrs. Swanberg & Swanberg, all of Great Falls, and Mr. Lester H. Loble and Mr. Melvin E. Magnuson, both of Helena, for respondent.

HONORABLE GUY C. DERRY, District Judge sitting in place of Mr. Chief Justice Lindquist, disqualified, delivered the opinion of the court.

Defendant has appealed from a judgment of the district court of Cascade county.

The cause was tried in the district court on pleadings which were amended to meet the proof in some particulars and plaintiff's action was based upon the theory, as indicated by his pleadings and proof, that plaintiff was injured as result of being furnished defective and improper safety shoes (same being contended to be appliances or equipment under the State Railroad Employers' Liability Act) while employed by the defendant in its shops at Great Falls, Montana. Plaintiff's right to recover is based upon his position that he, as an applicant for employment by the defendant, was given a thorough physical examination by a physician in the employ of defendant at St. Paul, Minnesota, a few months before the injury complained of, which examination was made as a condition of his employment, and that at the time of such examination he then had, unknown to himself, generalized arthritis, an impaired circulation in the extremities and bilateral hammer toes; that the defendant was thereby made aware of his physical condition, in particular reference to his feet; that notwithstanding his condition the defendant, after plaintiff's employment first as a machinist and later as a sweeper or laborer, required him to wear so-called safety shoes; that the condition of plaintiff's feet, which was known to the defendant or should have been known to it, precluded the use of safety shoes or at least required shoes of the particular size or condition that would not cause injury to his feet, but that notwithstanding that fact the defendant furnished defective and improper shoes which did cause injury to his feet which later resulted in the amputation of one of his legs.

It is the contention of the plaintiff that such result was the direct consequence of the violation of the duty of the defendant to furnish proper and safe shoes. Defendant took the position

that the shoes were obtained from the defendant by the plaintiff and fitted by himself and that if the same were defective or so tight as to cause injury to his feet, that fact should have been discovered and acted upon by the plaintiff, and his failure to so act in order to avoid the resulting injuries established contributory negligence as a matter of law. It was also contended by defendant that the plaintiff had assumed the risk of his employment and that, under the facts established by the evidence, he could not recover. It should be noted that the defense of assumption of risk was not pleaded.

Shortly before the trial the defendant had asked leave to file a second, amended answer whereby it sought to amend its answer by adding a further defense of assumption of risk by the plaintiff. The motion was denied by the district court, but when the case was submitted to the jury they were instructed upon the rule applicable to the defense of contributory negligence and assumption of risk, based upon the belief which was apparently entertained by the trial court that such defenses were available to the defendant and that neither the State Railroad Employers' Liability Act, Chapter 29, Laws of 1911, Rev. Codes 1935, sec. 6605 et seq., nor the Federal Employers' Liability Act, 45 U. S. C. A. sec. 51 et seq., were applicable to the case. No objections to the giving of such instructions were made by plaintiff.

There were 42 assignments of error submitted by the defendant and four cross-assignments of error by the plaintiff. In order to pass on these assignments of error, it is necessary to decide first whether the nature of plaintiff's employment brings the case within the State Railroad Employers' Liability Act. It may be conceded that there was neither pleading nor proof that would bring the case under the Federal Employers' Liability Act. The state Act was passed by the legislature for the protection of employees from injuries incident to employment on railroads and was patterned after the federal Act. It creates a different basis for liability than that afforded under the common law. Section 6605, Revised Codes 1935, reads as

follows: "Every person or corporation operating a railroad in this state shall be liable in damages to any person suffering injury while he is employed by such person or corporation so operating any such railroad, or, in case of the death of such employee, instantaneously or otherwise, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such person or corporation so operating such railroad, in or about the handling, movement, or operation of any train, engine, or car, on or over such railroad, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Sections 6606 and 6607, Revised Codes, are part of the same Act. "In all actions hereafter brought against any such person or corporation so operating such railroad, under or by virtue of any of the provisions of this act, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such person or corporation, so operating such railroad, of any statute enacted for the safety of employees contributed to the injury or death of such employee." Section 6606.

Section 6607, Revised Codes, provides that the employee of a railroad shall not be deemed to have assumed any risk incident to his employment when such risk arises by reason of negligence of his employer or any person in the service of such employer.

The evidence shows that plaintiff was employed in the shops of the Great Northern Railroad Company at Great Falls where

engines were taken down and repaired and generally overhauled. The work of plaintiff was on or about these engines while working as a machinist and later, while working as a sweeper or laborer, he was required to do the usual work required of a laborer in and about the shops. It can be fairly inferred from the evidence that the work plaintiff was doing had a direct relation to keeping the engines in operation and in the general maintenance of the railroad system.

This court, speaking through Mr. Chief Justice Brantly, established a measuring stick for determining the question of what type of employment brings the employee within the operations of the Act, in the case of Regan v. Montana Logging Company, 53 Mont. 153, 162 Pac. 388, 390. "Was the defendant, at the time the plaintiff was injured, engaged in the operation of the railroad, within the meaning of the statute? The liability declared by it attaches to the owner operating a railroad, in favor of an employe injured through the negligence of any officer, agent, or employe of the owner 'in or about the handling, movement or operation of any train, engine or car, on or over any such railroad, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, * * * or other equipment.' If we bear in mind that the purpose of the legislation is, as we have said, to protect the employes from injuries incident to the employment, the conclusion seems inevitable that the language quoted is broad enough to include an injury to one employed in any capacity by another employe in the same or a different capacity, in the accomplishment of any kind of service without which the complex process of operation cannot go on. Trains cannot be moved unless the roadbed, rolling stock, and other appliances are kept in repair. Cars must be loaded and unloaded; otherwise transportation cannot go on. Other tasks of similar nature must be done, the doing of which involves the risk of dangers peculiarly incident to railroads because of the character of the services required and the instrumentalities employed."

The Chief Justice discussed the holdings of different courts as to the various types of work which had been held to be covered by such a statute as ours, and then gives his conclusion as follows: "These are some of the instances which are held to be included within the scope of such legislation, and support the view expressed above that any part of the work connected with the railroad which necessarily and directly contributes to the operation of it, or the handling or movement of any train, engine, or car on or over it, comes within its scope."

Again this further pertinent observation appears in the Regan case: "The legislation is remedial in its nature, and its operation ought not to be limited by narrow construction. Doubtless cases will arise to which the statute has no application, and recovery may be had, if at all, only under the limitations of the common-law rule. The service being performed may be so remotely connected with the process of operation that it cannot by any intendment be deemed a part of it. Each case must be determined upon its own facts."

Using the yardstick established by the opinion in the Regan case and the rule therein enunciated, which has not since been departed from by this court, we cannot escape the conclusion that the work plaintiff was doing necessarily and directly contributed to the operation of the railroad and, accordingly, we must hold that the employment of the plaintiff was within the State Railroad Employers' Liability Act; that the provisions of sections 6605, 6606 and 6607 are applicable to this case; and that the rights of plaintiff and defendant are fixed and determined by the State Railroad Employers' Liability Act.

Instructions were offered by the plaintiff and refused by the trial court, based upon the above quoted sections of the statute. On the contrary, instructions were given to the jury whereby they were told that if plaintiff had been guilty of contributory negligence he could not recover. They were also instructed that plaintiff had assumed the ordinary risks of his employment. By their verdict the jury found the

plaintiff free from contributory negligence and in his favor on the instruction defining the assumption of risk. In our view of the case these instructions cast a greater burden on the plaintiff than he was required to assume, but since they are favorable to the defendant it is not in any position to complain. In cases arising under the State Railroad Employers' Act, contributory negligence does not bar a recovery. This court so held in the case of Kamboris v. Chicago, etc., Railroad Company, 62 Mont. 88, 203 Pac. 859, and the applicable rule is stated thus: "In a case of this kind, the contributory negligence of the employee does not bar recovery, but if there was contributory negligence, it only diminishes the damages in proportion to the amount of negligence attributable to the employee. This is true whether the action was brought under the state statute (Chapter 29, Session Laws of 1911) or the Federal Employers' Liability Act (35 St. at Large, 65 (U. S. Comp. St., secs. 8657-8665) [45 U. S. C. A. sec. 51 et seq.], 8 Fed. Stats. Ann., 2d Ed., 1208, 1339, 1352), as the provision in both Acts to this effect is the same. Therefore, even though deceased may have been guilty of contributory negligence, yet such negligence does not bar the discovery, but is a fact to be taken into consideration by the jury in apportioning the damages."

Since the case comes within the State Railroad Employers' Liability Act and the defenses of contributory negligence and assumption of risk have been passed on by the jury, the question remains for decision whether there was any actionable negligence charged and proved or any violation of duty owed to plaintiff by defendant. It should be noted that there is nothing in the record to disprove plaintiff's contention that the injury to his feet and the subsequent amputation of one leg resulted entirely from ulceration and infection in his foot and was wholly caused by the wearing of the shoes in question. In fact, the testimony of defendant's witnesses tends to corroborate this assertion. Thus the question revolves around the proposition of whether the shoes worn by the plaintiff, under

the facts in this case, constitute appliances or equipment furnished by the defendant; whether the plaintiff was required to wear them in the performance of his work and as a condition of his employment; and whether they were in a defective and unsafe condition.

The evidence in this case establishes that plaintiff had been an employee of the Great Northern Railroad Company for many years except for a period of time during the depression. In 1940 he made application to return to the company as a machinist and was directed by a representative of the defendant company to the physician employed by the defendant at St. Paul, Minnesota, for the purpose of a physical examination to determine his physical condition and his fitness to engage in such employment. The company physician made a thorough physical examination, as testified to by him and by plaintiff, and thereupon made a written report whereby he approved the plaintiff for employment but did call attention to the fact that he had "bilateral, hammer toes of second toes." Plaintiff was sent to the shops of defendant at Great Falls, Montana, with a letter to Mr. J. C. Treacy, shop superintendent of defendant at that point, which letter advised the superintendent that he had been given a physical examination. He was given employment as a machinist in the shops there, but in something less than a month was discharged as a machinist and later reemployed as a sweeper or laborer. The foreman who was in charge of the work there and who discharged him as a machinist was Mr. Dorricott, and he was reemployed as a laborer by Mr. Treacy, the superintendent.

The company rule book was offered in evidence and, by virtue of Rule 77 thereof, it was provided that certain types of shoes must be worn around the shop and roundhouse, and this provision is included in the rule: "Safety shoes having steel toe-caps are recommended as additional protection." Rule 4 of the company rule book provides that, "Employees must be conversant with and obey the rules and special instructions. If in doubt as to their meaning, they must apply to proper

authority for explanation.'' Rule 7 of the book provides: ''That in every case concerning requests for special instructions, etc., proper authorities should be understood to mean, the immediate supervisor in charge of the work the individual concerned is doing; or, in his absence, a higher official in the same department.'' Mr. Dorricott, testifying as a witness for defendant, in explaining these rules, testified that this rule meant that instructions which were not covered by the book pertaining to the safety of employees could be handled by proper authorities and that, as applied to the plaintiff, he, and in his absence, Mr. Treacy, would be the proper authority to issue special instructions. While plaintiff was on the job Mr. Dorricott, the foreman, came to him and demanded to know why he was not wearing safety shoes while working. He was then ordered by the foreman, and also by Mr. Treacy, the superintendent, to obtain a pair of safety shoes or to get off the job. He was thereupon given an order signed by the superintendent directing the store maintained by the defendant on its premises to furnish him with a pair of safety shoes and to have the purchase price deducted from his pay.

Responsive to the directive of his foreman, plaintiff went to the store maintained by the defendant on the premises and purchased a pair of safety shoes. According to the testimony of defendant's witnesses, these shoes have a metal cap which can withstand pressure of from three to five tons. Their purpose is to save the feet and toes where heavy objects may fall on them. The testimony shows that they have been a great factor in helping to prevent injury to employees and that their use has cut down the accident rate in the shops very materially. Defendant's employee who waited on plaintiff and sold him the shoes assured plaintiff that they were a good fit and the only size available in stock which would fit his feet. Plaintiff complained at the time that they were snug but was informed that was the best they had. At later times plaintiff complained to the superintendent that the shoes did not fit him and were uncomfortable, but he was assured by the superintendent that

he, himself, had obtained a pair a few weeks before and that they had spread out, and he further observed that all shoes are tight when you first get them. Plaintiff continued to wear the shoes although they were uncomfortable, but there is nothing in the evidence taken as a whole which would indicate that the shoes caused any serious disturbance or injury to plaintiff's feet until a day or two before he consulted the company physician with reference to them. It is true that he had complained from time to time that defendant had furnished him with a pair of shoes which did not properly fit and were uncomfortable. It is fairly obvious that the superintendent could not then have anticipated injury or he would have directed plaintiff to cease wearing the shoes. On April 16th, about two weeks before infection had set in, plaintiff consulted the company physician with reference to a sprained shoulder but he did not mention his feet at that time or make any complaint with regard to them. There is nothing to suggest that the plaintiff, unskilled in medicine and without any knowledge as to the causes of infection, had any idea or was given any reason to believe that the wearing of the shoes in question would cause a condition which would result in infection and there is nothing to suggest that the hazard of wearing such shoes was so obvious that the ordinarily prudent person, under the same circumstances, would have observed and appreciated it and could reasonably have anticipated the consequences.

The general rule is that under an act such as this the employee assumes the risk normally incident to the occupation in which he voluntarily engages; other and extraordinary risks and those due to the employer's negligence he does not assume until made aware of them or until they become so obvious and immediately dangerous that an ordinarily prudent person would observe and appreciate them. King v. Norfolk-Southern Railroad Company, 176 N. C. 301, 97 S. E. 29; Matson v. Hines, 63 Mont. 214, 207 Pac. 474; Leonidas v. Great Northern Railway Co., 105 Mont. 302, 72 Pac. (2d) 1007.

The evidence discloses that shoes of this type should not

have been worn by plaintiff in view of the condition of his feet and particularly because he had bilateral hammer toes. Such a condition created a tendency for a shoe that would be normal for an ordinary foot to chafe and cause an abrasion of the skin, which would permit infection to enter through the skin. Dr. Savage, defendant company surgeon at St. Paul, who made the examination of plaintiff as a condition precedent to his employment, testified during the trial that the type of shoes a man wears when he has hammer toes is of greater significance than if he were not so affected. There was some evidence to the effect that Dr. Savage, at the time of such original examination, should have discovered the condition of his feet and particularly the fact that there was impaired circulation and arthritis. The evidence shows the safety shoes had been used in considerable numbers around the shops and that the foreman and superintendent claimed to be, and apparently were, familiar with their use, and when they assured plaintiff that the shoes would adjust themselves to his feet after a little use plaintiff had the right to rely on such assurance. As stated by this court in the case of Leonidas v. Great Northern Railway Company, supra, the employee may rely upon his recognized superior's advice, assurance and commands notwithstanding any misgivings of his own and he is not barred from recovery for injuries received in obeying such commands because he could justify disobedience of the order.

The rule for fixing liability in a case such as this is set forth by Mr. Labatt in Volume 4, section 1470, page 4304, of his work on Master and Servant, as follows: "According to the great majority of the cases, therefore, all that is necessary to fix liability upon the master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position."

The question now arises as to whether the shoes were appliances as referred to in the State Railroad Employers' Liability Act. In connection with cases construing the Federal Employers' Liability Act the word "appliance" has been given

a wide variety of definitions. It has been construed in many courts and the general statement found in texts and in the cases is that the word "appliance" is very broad and includes everything applied or used as a means to an end. See Cook v. Big Muddy-Carterville Mining Company, 249 Ill. 41, 94 N. E. 90; Roberts v. City of Los Angeles, 7 Cal. (2d) 477, 61 Pac. (2d) 323; Honaker v. Board of Education, 42 W. Va. 170, 24 S. E. 544, 32 L. R. A. 413, 57 Am. St. Rep. 847; Leonidas v. Great Northern Railway Co., supra. An appliance has been held to include premises. Thus the failure of an employer to furnish a domestic servant with lodging in such repair as not to endanger her health is a legal violation of his duty to furnish safe appliances. Collins v. Harrison, 25 R. I. 489, 56 A. 678, 64 L. R. A. 156. A safety belt used by a telephone lineman to attach himself to a pole was held to be an appliance. Boone v. Lohr, 172 Iowa 440, 154 N. W. 591. With reference to transportation it has been held that such term included all machinery and equipment furnished by the carrier to use in connestion with the conduct and management of its business. Burns v. Pennsylvania Railroad, 233 Pa. 304, 82 A. 246, Ann. Cas. 1913B, 811.

Appliance is defined in Funk & Wagnalls New Standard Dictionary of the English Language as "anything through or by which something is effected or accomplished, or which appertains or is essential to the conduct, course, or operation of a particular thing; an instrumental means, aid, appendage, or device." Corpus Juris defines appliance as follows: "A thing applied or used as a means to an end; something applied as a means to an end, either independently or subordinately; something applied or used directly; that which is adapted to the accomplishment of a purpose; the thing applied or used; an instrumental means, aid, or appurtenance; an apparatus or device. The term, while indefinite, is very broad and comprehensive in its meaning, and includes not only inanimate things, such as machinery, tools and ways, but also human beings and animals generally." 4 C. J. 1378. "A thing applied

or used as a means to an end, either independently or subordinately." 6 C. J. S. 75.

Following the reasoning of Mr. Chief Justice Brantly in the case of Regan v. Montana Logging Company, supra, and bearing particularly in mind the injunction of the court in that case that the State Railroad Employers' Liability Act, being remedial in nature, ought not to be limited in its operation by a narrow construction, we feel that shoes worn as they were by the plaintiff under the circumstances of this case, being items used as means to accomplish the work which plaintiff was doing and required by the nature of his work, are appliances and equipment as contemplated by the provisions of the State Railroad Employers' Liability Act and that the defendant was duty bound to use reasonable care to furnish the plaintiff with reasonably safe and proper shoes which would not cause him injury, this particularly in view of the fact that he wore the shoes at the express direction of defendant and was fitted with the shoes by the defendant with the imputed knowledge that his feet were in such condition that they could not be safely worn. If we accept plaintiff's evidence we must find that these shoes when used on feet having hammer toes were defective and dangerous. The knowledge of Dr. Savage as the defendant's examining physician, acquired at the time of his examination of plaintiff in July of 1940, made to determine his eligibility for this particular job, that plaintiff had hammer toes was imputed to the company. Maryland Trust Company v. National Mechanics' Bank, 102 Md. 608, 63 A. 70; 19 C. J. S., Corporations, sec 1078, p. 613.

As to defendant's contention that it had no knowledge of the particular condition of plaintiff's feet, it is sufficient to say that such knowledge was imputed to it. The rule with reference thereto is succinctly stated by the editor of Corpus Juris Secundum, as follows: "A corporation can acquire knowledge or notice only through its officers and agents, and is charged with knowledge of all material facts of which they acquire knowledge while acting in the course of their

employment and within the scope of their authority, even though they do not in fact communicate it.'' 19 C. J. S., Corporations, sec. 1078, p. 613.

Nor do we think that the rule with respect to defendant's liability should be changed by the fact that the shoes in question were paid for by plaintiff. It would be a harsh rule to hold that a workman would be denied recovery for injuries received as a result of defective equipment which he was required to use by order of his superior officer merely because he had to pay for the equipment. The determining question should be, we believe, whether the employee is required to use the equipment in connection with his employment and whether he is an entirely free agent in selecting such equipment. Here plaintiff was given an order signed by his superior officer directed to the storekeeper of defendant company to furnish shoes kept in stock by defendant for the use of defendant's employees. As stated by one of defendant's witnesses, the wearing of metal-capped shoes was for the benefit of the company as well as plaintiff. Defendant gave plaintiff the only shoes it had in stock available for feet of his size. As before noted, the shoes when used on feet with hammer toes were defective and dangerous.

Defendant complains of the refusal of the trial court to permit it to file a second, amended answer setting up the defense of assumption of risk. As we have heretofore indicated, we do not believe that this defense was available to defendant in this action. However, the court instructed the jury that the plaintiff assumed the ordinary risks of his employment and since all the evidence which did affect this defense was available for the information of the jury, it cannot be seen where the defendant would in any event have been prejudiced by the refusal of the court to permit the amendment. The granting or refusal of the trial court of permission to file an amended pleading is within the sound discretion of the court and this application being made shortly before the trial, when its effect would have been to delay the trial, and

the defendant had had several months' time in which to file the same, no abuse of discretion is shown in the refusal of the court to permit the amendment to be made. Granger v. Erie, 101 Mont. 170, 53 Pac. (2d) 443; Clack v. Clack, 98 Mont. 552, 41 Pac. (2d) 32.

Defendant asserts that the evidence with respect to hammer toes was objected to by the defendant and since there was no allegation in the original complaint with respect to the plaintiff having this condition, the evidence was improperly received. In the complaint there were general allegations to the effect that the condition of his feet precluded the wearing of safety shoes but, in any event, the record shows that the fact that plaintiff was afflicted with bilateral hammer toes was brought out in the evidence, first with the report of the defendant's examining physician, Dr. Savage, and later by the testimony of plaintiff without any objection. The complaint was thus automatically amended to meet the proof. Granting of motion to amend to meet proof was not error. If the defendant took the position during the trial that such testimony created a variance from the allegations of the complaint, then it should have objected to the reception of such evidence on that ground. Failure to object at the proper time waives the error. Yoder v. Reynolds, 28 Mont. 183, 72 Pac. 417; Labbitt v. Bunston, 84 Mont. 597, 277 Pac. 620.

Defendant asserts that the verdict is so excessive as to indicate passion and prejudice on the part of the jury, but offers no argument in support of this specification of error. In view of the great expense for medical treatment, hospitalization, pain and suffering, and the life expectancy and earning capacity of the plaintiff, and his disability, a verdict of $20,000 is not subject to the criticism offered by the defendant.

The other assignments of error have been carefully considered by the court and most of them have been covered by what has been heretofore said in this opinion. As to those not specifically mentioned, we find that they are not subject to the objections made by the defendant.

The judgment is affirmed.

Associate Justices Morris, Adair and Angstman, concur

Mr. Justice Cheadle (dissenting).

I am unable to concur in the result reached by the majority, which is premised principally upon the proposition that the case falls within the purview of the state Railroad Employers' Liability Act, and especially section 6605, Revised Codes, as follows: "Every person or corporation operating a railroad in this state shall be liable in damages to any person suffering injury while he is employed by such person or corporation so operating any such railroad, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such person or corporation so operating such railroad, in or about the handling, movement, or operation of any train, engine, or car, on or over such railroad, *or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.*" (Emphasis mine.)

As I read the majority opinion, the so-called "safety shoes" which allegedly caused the injury complained of are to be regarded as either "appliances," "machinery," or "equipment" belonging to the defendant railway company, and defective or insufficient due to its negligence. If the provisions of the statute above quoted are not sufficiently broad to include such an item as shoes, purchased by and belonging to the employee, then the conclusion arrived at by the majority is incorrect and unsound. Such, I think, is the case.

It is argued that the former decisions of this court compel a liberal construction of this section. I agree that this is and should be so, and was undoubtedly so intended by the legislature. But a construction of the statute holding its provisions applicable to this case is carrying that principle beyond all reason, and without basis either of precedent or logic. The cited case of Regan v. Montana Logging Company, 53 Mont. 153, 162 Pac. 388, is not authority for any such proposition.

There the character of the services being performed by the employee was in question, and the court correctly decided that such services were performed in connection with the operation of trains. This court in applying the principle above alluded to said: "The legislation is remedial in its nature, and its operation ought not to be limited by narrow construction. Doubtless cases will arise to which the statute has no application, and recovery may be had, if at all, only under the limitations of the common-law rule. The service being performed may be so remotely connected with the process of operation that it cannot by any intendment be deemed a part of it. Each case must be determined upon its own facts."

In Morelli v. Great Northern R. Co., 89 Mont. 603, 300 Pac. 210, 211, the question whether goggles were appliances or machinery was suggested by this court, but not directly answered because unnecessary to the decision. It was there said: "The question raised is whether or not 'goggles' are 'tools and appliances' within the meaning of the general rule, or 'appliances, machinery' within the meaning of section 6605, Revised Codes 1921.

"The authorities generally declare the negative, but we need not here decide the question. See Burns v. Delaware [& A. Tel. &] Tel. Co., 70 N. J. L. 745, 59 A. 220, 67 L. R. A. 956; Emerson Brantingham Co. v. Growe, 191 Ind. 564, 133 N. E. 919; Stapleton v. Reading Co., 3 Cir., 26 F. (2d) 242; Kolbow v. Haynes-Langenburg Co., 318 Mo. 1243, 3 S. W. (2d) 226; 4 C. J. 'Appliances,' 1379."

See also 3 Words and Phrases, Perm. Ed., "Appliance," p. 746.

In this connection it must be remembered that the shoes in question did not belong to the defendant company and were not sold by it to plaintiff, except in the sense that they were distributed by an employee of the railway company for the convenience of its employee. Incidentally, the shoes were not fitted to the plaintiff by defendant's employee, but were selected by plaintiff from the assortment available.

Having arrived at the conclusion that the case falls within the purview of the Railroad Employers' Liability Act, the majority logically should have remanded it for a new trial. Section 6606, Revised Codes, provides: "In all actions hereafter brought against any such person or corporation so operating such railroad, under or by virtue of any of the provisions of this act, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; * * *."

The case was tried on the theory that it did not fall within the Liability Act, but since the majority has held by implication that the court was in error in excluding this theory, a new trial should be had on the proper theory. It is true that the trial court instructed the jury on the contributory negligence rule applicable in common-law negligence actions, but did not instruct the jury as to the law of comparative negligence embodied in section 6606. In view of the fact that the record unquestionably shows contributory negligence on the part of the plaintiff, it is likely that the jury under an instruction on comparative negligence would have returned a smaller verdict. Under the instruction given the jury was faced with returning a verdict for the full amount of the injuries, or none at all. The assertion in the majority opinion that the court's action in instructing the jury on contributory negligence as it did was favorable to defendant is by no means convincing. Even conceding the correctness of the conclusion arrived at by the majority, it seems logical that a new trial should be had in accordance with the theory therein expressed, which is contrary to that adopted by the trial court.

It seems to me that the record indicates conclusively that the plaintiff was guilty of contributory negligence as a matter of law, and that, therefore, under the theory of the trial court the defendant's motion for non-suit should have been granted. The record shows that the plaintiff continued to wear the shoes in question for a period of at least two and one-half months

after he discovered that they were too tight and were resulting in increasing injury to his feet. At one time he complained of this to his foreman who told him to return the next day, but he continued to wear the shoes without following up his complaint. It was shown also that during this period he consulted a physician employed by the railroad in connection with other complaints, but did not mention the condition of his feet. Obviously the plaintiff was the only one who could be aware of the condition, and continuing to wear the shoes until his foot became so infected that amputation was required constituted negligence on his part. Such action on the part of plaintiff, it appears to me, was the proximate cause of his injury.

Without encumbering the record further, it is my view that the trial court committed error in permitting evidence of the existence of hammer toes on plaintiff's feet, over defendant's objection, and permitting an amendment of the complaint in that respect. This was a vital point in the case and inconsistent with the facts alleged in the complaint, and amounted to an entire new theory as to the cause of plaintiff's injury.

I further believe that the trial court should have permitted amendment of defendant's answer to include the defense of assumption of risk. Because the granting or refusal of further amendments of pleadings is largely within the discretion of the trial court, refusal of the amendment proposed in this instance by itself probably would not warrant a reversal of the judgment, but the cumulative effect of this and other rulings mentioned resulted in the denial of a fair trial.

I agree that the provisions of the Railroad Employers' Liability Act should be broadly construed in favor of injured workmen, and that doubts as to its applicability should be resolved in their favor, but here the majority has gone far beyond any reasonable construction and beyond the obvious intention of the legislature in the enactment of this legislation. But regardless of my views on this question, this court, to be

consistent, should at least remand the cause for a new trial on the theory which the majority has determined to be applicable.