KNIGHT & WALL CO., et al v. STATE REVENUE COMMISSION.
No. 19119.

KING KOLE, Inc., et al v. STATE REVENUE COMMISSION.
No. 19157.

SOUTHERN FISH CULTURISTS, Inc. v. STATE REVENUE COMMISSION.
No. 19205.

Circuit Court, Leon County.
June 23, 1964.

Charles S. Ausley, Tallahassee and Guy W. Spicola, Tampa, for plaintiffs Knight & Wall Co., et al.

David E. Emanuel, Miami, for plaintiffs King Kole, Inc., et al.

Walter Warren, Leesburg, for plaintiff Southern Fish Culturists, Inc.

James W. Kynes, Attorney General, Jack A. Harnett, Ass't Attorney General, Fred M. Burns, Ass't Attorney General, John D. Moriarty, General Counsel, State Revenue Commission, for the defendant.

HUGH M. TAYLOR, Circuit Judge.

*Final decree*: Each of the above styled cases attacks the constitutional validity of chapter 63-527, Laws of Florida, and/or its application to transactions customarily engaged in by the respective plaintiffs.

Each case is brought and maintained as a separate action. The court has heard final arguments in each case and has prepared this order which will be signed and filed as a final decree in each case. This is done in order to avoid the necessity of repetition, because a consideration of all the cases presents more clearly the reasoning of the court, and because a single decree will facilitate the application of the court's rulings to the practical enforcement of the statute.

The constitutional validity of the statute as a whole has been discussed in detail in the order entered December 20, 1963, in case no. 19119, and what was there said, to the extent applicable, is adopted as an order in each of the other cases, no. 19157 and no. 19205.

Each of the plaintiffs is engaged in the business of selling at wholesale items of personal property which the state revenue commission has determined to be subject to the tax imposed by chapter 63-527.

Before discussing the numerous items with respect to which adjudication of taxability is required, the court will construe a phrase which counsel for some of the plaintiffs feel renders the statute invalid because of vagueness. The phrase is "and similar, related, or like items," as used in subsection 3 of section 3. Counsel view the use of this language as an attempt to vest legislative power in the state revenue commission. However, when these words are examined in their setting they have a very definite and proper meaning and do not in any sense constitute a delegation of legislative power.

The tax imposed by the statute is upon the sale of "fishing, hunting, camping, swimming and diving equipment." There would be no constitutional objection to the tax had the legislature provided no more specific definition of the subject of the tax,

but subsection 3 of section 3 is incorporated in the statute for the purpose of guiding the state revenue commission, the courts, and citizens in construing and applying the statute. The first part of this subsection defines fishing, hunting, camping, swimming and diving equipment as including "any device, implement, tool, article or object customarily or primarily used, operated, or consumed by participants in the course of and in the furtherance of the recreational pursuit of fishing . . . hunting . . . camping . . . swimming . . . or diving. . . ." This part of the definition is a restriction upon the broadest possible construction of the phrase "fishing, hunting, camping, swimming and diving equipment." It will be observed that the phrase as used in the statute is to be limited to "recreational" pursuit of these activities. It will also be observed that the tax is to be limited to articles customarily or primarily used, operated, or consumed by participants in the stated activities.

After thus limiting the scope of the statute, the legislature saw fit to specifically enumerate certain items that must be considered as being within the definition and certain items that are specifically excluded from the definition. Having enumerated items to be included in the definition, the legislature employed the phrase "and similar, related, or like items" to make it clear that the enumerated items were more illustrative than exclusive and were specifically mentioned as a means of clarifying the legislative intent without attempting a completely exhaustive tabulation of every article embraced within the definition of the class taxed.

The phrase "similar, related, or like items" does not in any sense constitute an enlargement of the basic definition. It is a qualification of the specific enumeration of items included within that definition.

The following basic principles must control in the application of the statute to the sale of specific articles.

The tax imposed is upon the sale at wholesale of fishing, hunting, camping, swimming and diving equipment. The statute defines fishing, hunting, camping, swimming and diving equipment as "any device, implement, tool, article or object customarily used, operated or consumed by participants in the course of and in the furtherance of the recreational pursuit of" fishing, hunting, camping, swimming and diving.

The court construes this definition as meaning that the tax is imposed with respect to the sale at wholesale of articles of a specific class when that class of articles is usually and customarily devoted to one of the named activities or is primarily devoted to one of such activities.

It would be an unreasonable construction to say that the sale of all knives of a particular type should be taxed merely because some knives of that type are customarily used in such activities. And, of course, the wholesale dealer cannot be expected to know, in advance, the use which a retail purchaser will make of any particular piece of merchandise. As used in the definition, the word "customarily" should be considered as meaning that the specific restricted class of articles to which an item of property belongs is customarily or habitually or generally used by the ultimate consumer for one of the enumerated purposes.

As used in the statute the word "primarily" has essentially the same meaning. It relates to the specific types of property which in the hands of those who purchase them are used, for the most part, in the pursuit of one of the enumerated activities.

Obviously there are many items of property which are frequently used in one of the enumerated activities although only a minority in number of the articles of that class which are manufactured are used in such activities. For example, there is in evidence a knife of a type that is sometimes called a butcher knife, sometimes called a hunting knife, sometimes called a kitchen knife. It is equally adapted to the cutting of meat in a butcher shop, the cutting of meat or other things in a kitchen or the scaling of fish and the cleaning of game. It is customary for campers to use knives of this general type, but that does not mean that such knives are customarily used in camping. It is only when the customary use of the class of articles is in one of the enumerated activities that it comes within the language or the intent of the statute.

Another article offered in evidence is a tackle box, quite obviously designed and most often used as an instrumentality for the storage, carrying and protection of fishing equipment. It has various compartments designed to accommodate artifical lures, hooks, floats, weights, etc., with space adapted for larger instruments such as hook extractors, pliers, etc. A tackle box is sometimes used by landscape artists who find that the size and shape of the compartments adapt them to the holding of tubes of paint and the space that fishermen use for hook extractors, pliers, etc. may be used for the storage of canvas and brushes. The occasional use of a tackle box for purposes other than fishing does not alter the fact that tackle boxes as a class of property are both customarily and primarily used in fishing.

It frequently happens that a manufactured article is of such a nature that in the form in which it is customarily sold at wholesale it has not been completely dedicated to any specific use or specific class of usage. Until so dedicated and by a clear

process of adaptation committed to a restricted class dedicated customarily or primarily for one of the enumerated activities the sale of such articles is not taxable. Looking to the evidence in this case for an illustration, a good example can be found in polypropholene rope, a sample of which was introduced in evidence as plaintiff's exhibit "FF". This rope is adapted to use in the manufacture of ski ropes. It is equally adapted to use as anchor line or mooring line. It could also be effectively and efficiently used by a farmer as a plow line. Quite obviously it cannot be said that polypropholene rope as a class of merchandise when sold in bulk is customarily or primarily to be used in swimming or diving merely because a substantial part of the useage of this type of rope is in the making of ski ropes. On the other hand, a section of such rope cut to a suitable length and equipped with an appropriate handle or handles becomes a ski rope which is an article both customarily and primarily used in swimming and boating activities. It is clear that the sale at wholesale of ski ropes is within the statute.

The fact that a manufactured article may ultimately find its way into use in one of the enumerated activities does not render its sale at wholesale taxable. But once the manufactured article has been committed to the taxable use, its sale is subject to the tax. For example, the sale of polypropholene rope in bulk should not be taxed. The sale of ski rope manufactured from polypropholene rope should be taxed. It would not be a taxable transaction for a wholesaler to sell large quantities of this rope to a manufacturer of ski ropes, and the mere fact that the wholesaler knew or had reason to believe that the rope probably would be ultimately used entirely or in substantial part in the manufacture of ski ropes would not render the sale taxable. On the other hand, if a wholesaler were to advertise or sell as a "package" lengths of polypropholene rope suitable for the manufacture of ski rope and handles adapted for the manufacture of ski ropes for the purpose and with the intent that the purchaser would forthwith assemble the several items into ski ropes and sell them as such, this would constitute evasion, and evasion should not be indulged in or condoned. The wholesale dealer and the revenue commission acting in good faith can reasonably resolve most of the problems which arise.

In the application of the principles which have been stated to the myriads of situations which the industry can develop, it will be necessary for many administrative decisions to be made, and it may be necessary to have further judicial review of the administrative action, but this does not render the statute invalid. The problems of administration, particularly when they involve the ascertainment of facts, become more difficult as our tax structures become more complex. But difficulty to the execu-

tive or the judiciary departments of government does not justify the courts in overthrowing or emasculating by construction the considered action of the legislature.

In those instances in which the administrative department of the government has made a definite and specific determination of the application of the statute to a transaction, there arises an inference of the correctness of that determination. This inference is not binding upon the court but should be followed unless the greater weight of the evidence before the court impels it to a different conclusion. In considering the various items with respect to which evidence has been received, the court will follow this rule.

The specific products sold by the several plaintiffs will be considered in the order in which the cases were filed.

### Case No. 19119

### Knight & Wall Company, et al

Knight and Wall Company, et al. deal in a variety of products many of which present difficult but not impossible problems in classification. Each item with respect to which evidence was offered will be classified as taxable or not taxable as follows —

*WATERCOOLERS:* The court finds that watercoolers of the type introduced in evidence sold under the trade names of "Igloo", "Arctic Boy" and "Horton" are equipment often used in camping but more often used by work crews on outdoor jobs. They are not "primarily used, operated or consumed" in the recreational activities of hunting, fishing or camping. The sales of such articles are not taxed by the statute under consideration.

*SHOTGUNS:* The sales of shotguns manufactured and designed for hunting are, of course, taxable. "Trap guns" are shotguns designed for and used almost exclusively for trap shooting—a form of target shooting. The sale of such guns is not taxable. The shotguns used in skeet shooting are apparently virtually the same as those used in hunting, and, since the primary use of such guns is hunting, they are taxable.

*SHOTGUN SHELLS:* Conventional shotgun shells are taxable. Target loads designed and used *primarily* for target shooting are not taxable. Blank shells used for starting races are not taxable.

*PISTOLS AND AMMUNITION:* Ammunition designed for use in pistols is not taxable because pistols, although firearms, are not primarily used, operated or consumed in hunting. Ammunition designed and sold primarily for use in rifles is taxable.

*KNIVES:* Knives equally adapted for hunting, butchery and ordinary kitchen use are not *primarily* used in hunting and are not taxable. On the other hand, knives designed and used primarily for hunting, particularly when advertised as hunting knives and sold with sheath to be worn on the belt, are taxable.

*HATCHETS:* Hatchets are not primarily used in hunting, fishing or camping and are not taxable. Even small hatchets worn in cases are not *primarily* hunting or camping equipment.

*CORD, TWINE and ROPE:* When sold in rolls or hanks and adaptable to many uses, cord, twine and rope is not taxable. When cut and adapted to a particular use it becomes taxable if the use to which it is adapted is primarily hunting, camping, fishing, swimming or diving. Cord which is suitable for *making* decoy lines is not rendered taxable by that fact, but if the cord is of a size and is cut and sold at wholesale in lengths which render it primarily usable only as decoy lines so that it has become dedicated to that use then it becomes taxable. Rope suitable for making ski lines and equally suitable for other purposes is not taxable, but if the rope be cut and knotted or equipped with handles so as to adapt it primarily for use as ski lines it loses its general character as rope and assumes the specific characteristics of a ski line and is equipment of a type taxed by the statute.

*TACKLE BOXES:* Tackle boxes are used primarily as accessories for fishing and are taxable, notwithstanding the fact that they are sometimes used for other purposes.

*LUBRICATING AND CLEANSING OILS:* Oils adapted for general use on various types of equipment are not taxable unless they possess characteristics which render them peculiarly and primarily adapted for use on fishing and hunting equipment. The "Baracuta" reel oil, a sample of which is in evidence as plaintiffs' exhibit "Y", is not taxable, although called "reel oil" and adapted also for use on guns, because it is equally adaptable to use on razors, mowers, mixers and any number of mechanical devices requiring a light oil and is not shown to be primarily "used, operated or consumed" in hunting or fishing. If sold as an integral part of a cleaning kit for guns or rods it would be taxable.

*FOLDING SEATS:* Folding seats may or may not be primarily used in camping, hunting or fishing activities. Two types were offered in evidence. One is called a "stadium seat" and is quite apparently equally adapted to use in stadia or on small boats to provide some cushion and a back rest to the user. But this seat has no legs and must be used in connection with a seat. This is clearly not taxable. The other seat in evidence (exhibit "AA") is not designed for use on a stadium or the seat of a boat as it is equipped with legs. It has numerous pockets. Its general make-up, as well as the manufacturer's suggested uses, indicate that it is designed *primarily* for uses within the statute, although it can be used for some other purposes. Its sale is taxable.

*TENTS:* Tents may or may not be taxable according to their primary adaptability and use. Children's play tents are not taxable, nor are circus tents. But tents designed and sold primarily for camping are taxable. There is not sufficient evidence before the court for a more specific declaration on this point.

*WATERPROOFING MATERIALS:* Waterproofing materials equally adapted to the preservation of ropes, tarpaulins, tents and exposed wood are not taxable.

*CLEANING KITS:* Cleaning kits for the cleaning of guns, other than those designed for cleaning hand guns only, are taxable.

*THERMOS JUGS:* Thermos jugs are classified by the state revenue commission as taxable if they have a capacity of two quarts or more. There is insufficient evidence from which the court can determine that this determination is unreasonable. Mr. Frank Cooper, the only witness who testified on this question, stated that he could not tell if there was a reasonable basis for this distinction.

*CAMP STOVES:* Camp stoves such as that introduced in evidence as plaintiffs' exhibit "GG" are taxable as a unit including the fuel cylinder with which it is equipped. This device could be used in the home for emergency cooking in case of a power failure, but it would be primarily used in hunting and camping. The cylinder of fuel, although tax free if sold separately, would be included as a part of the stove and its value subject to the tax.

*STERNO:* Sterno outfits are not taxable. The uncontradicted evidence is that sterno is used chiefly in the home and in restaurants.

*COOKING AND EATING UTENSILS:* Cooking and eating utensils of such type that they may be used with equal facility in the home or in camping are not taxable. This applies to such articles as plaintiffs' exhibits "JJ" and "KK".

*INFLATABLE RAFTS:* Inflatable rafts that are used as boats are expressly exempted from the statute. Any inflatable raft used as an accessory life boat would also be exempted from the tax. The small inflatable floats used as play things in swimming are swimming accessories and subject to the tax.

*BOWS AND ARROWS:* Archery bows of types that are equally adaptable to hunting and target shooting cannot be said to be primarily used in either activity and would, therefore, not be subject to the tax. Any archery bows of a type used primarily for hunting, if any are manufactured, would be subject to the tax. Arrows designed primarily for hunting are subject to the tax. Those designed for target practice and not suitable for hunting are not subject to be taxed.

*FROG GIGS:* Gigs are subject to tax. Wooden poles that are adaptable to be used in the manufacture of gigs but are equally adaptable to use as hoe handles or rake handles, until dedicated to use as gig handles by being sold with or attached to gig heads, are not subject to the tax.

*LURES:* Lures and live bait used in sport fishing are taxable.

*OUTRIGGER EQUIPMENT:* Outrigger equipment that constitutes a permanent attachment to boats is a part of the boat to which it is attached and not subject to the tax. Demountable poles and equipment not permanently attached to the boat are fishing equipment and subject to the tax.

*BB PELLETS AND AIR RIFLES:* BB pellets and air rifles are articles primarily used as children's toys and are not subject to tax.

*NETS AND SEINES:* Commercial seines and nets are expressly excluded from the statute. Landing nets, bait nets, etc., designed primarily for use in recreational fishing activities are subject to the tax. A more specific statement cannot be made without more detailed information as to particular nets.

*DIVING EQUIPMENT:* Diving equipment designed primarily for salvage and commercial underwater activities is not subject to the tax, but diving equipment used primarily for recreational activities is subject to the tax. Again, the evidence in this case does not sufficiently identify a particular item of equipment to enable the court to make a more specific ruling.

*COTS:* Cots are not primarily used in camping activities and are not subject to the tax unless peculiarly adapted for camping in some particular way. This is also true with regard to *HANDWARMERS*.

## Case No. 19157

### King Cole, Inc., et al.

King Kole, Inc., et al. are manufacturers and distributors of bathing and swimming suits. They first attack that portion of the body of the statute which includes bathing and swimming suits within the class of property, the sale of which at wholesale is taxed, by arguing that the title to the act does not place them or the public on notice that the tax will be imposed upon sales of this

class of merchandise. They rely upon section 16, article III of the constitution.

The title to the act states that it is one "relating to certain * * * swimming and diving equipment * * *." The contention of these plaintiffs is that bathing and swimming suits are not "equipment" and, therefore, are not within the subject expressed in the title to the act or matter properly connected therewith.

There is some testimony that in the manufacturing trade, garments are not regarded as equipment, and these plaintiffs' argument is based very largely upon this testimony.

In the only case on the question which has been called to the attention of the court or discovered in independent research, clothing was held to be equipment.[1]

The legislature evidently regarded the title as broad enough to cover a tax upon the sale of bathing and swimming suits, because in the body of the act these items are specifically mentioned. It is only when the court can say beyond a reasonable doubt that the legislature has failed to comply with the constitution that it is justified in striking down a formal enactment of the legislature on the ground that there has been a failure to comply with section 16, article III of the Florida constitution.[2]

The word "equipment" may have a very broad connotation and after indulging the presumption in favor of the legislative act, this court is of the opinion that it has not been clearly made to appear that bathing and swimming suits are not reasonably included within the expression "swimming and diving equipment."

In the King Kole case, the evidence develops that there are several types of garments which are classified by the revenue commission as "bathing, swimming, or diving suits," which may be divided into four general classifications —

(1) Specially treated suits designed as mechanical aids to the preservation of body heat and the protection of the body during extended periods of underwater activity. These garments appear to be manufactured for both male and female use.

(2) Garments of a strictly utilitarian nature designed to be worn in bathing and swimming activities to provide that limited coverage of the body required by current standards of modesty with a minimum of interference with the free movement of the body and limbs and providing a minimum of resistance in swimming. These garments are sometimes referred to in the trade as "tank suits". This class includes many men's bathing trunks and the swimming attire worn usually by women in diving and swimming competition.

---

1. Police uniforms, Steinfeld v. Jefferson County (Ky.) 229 SW.2d 319. Safety shoes in railroad shops, Palmer v. Great Northern Ry. Co., (Mont.) 170 P.2d 768.
2. Warren v. Pope, 64 So. 2d 564.

(3) Garments intended for use on beaches, around pools and in swimming which, in addition to meeting the requirements of modesty, are intended to enhance the appearance of the wearer. These garments may be described as being both utilitarian and decorative. They are worn in the water at the will of the wearer but are frequently worn merely for beach play. This class includes many items of men's clothing, and a vast majority of women's bathing suits.

(4) A class of garments called swimming or bathing suits, but which are designed and intended exclusively for display around pools and on beaches, and which are made of material which, if worn in the water, will disintegrate or tarnish so quickly as to render the use of the garments in actual swimming or diving impractical. This class represents a comparatively small percentage of the garments sold under the heading of swimming or bathing suits and appears to be confined exclusively to ladies' wear.

The plaintiffs in the King Kole case argue first that the use of the term "bathing, swimming and diving suits" should be limited to articles of the first class above described. This argument cannot be accepted for the reason that there is nothing in the statute to justify a conclusion that the legislature intended any such narrow or restricted use of the words employed in drafting the statute.

They next contend that if any bathing attire other than class (1) is included in the definition contained in the statute that the definition should be limited to those articles described in class (2) above. In support of this argument, it is pointed out that some ladies use rather elaborate and decorative bathing suits as play suits for lounging and for domestic activities. They also point out that quite often young children are attired in garments that are sold as bathing suits for the purpose of play and sunbathing. It is a matter of common knowledge that not infrequently, clothing of the type embraced within the class (3) above defined, and even sometimes class (2), are used for purposes other than actual swimming or diving. On the other hand, the primary use of the class of merchandise described is to equip persons for the activities of bathing, swimming and diving, and the court cannot avoid the conclusion that the incidental use of these articles for wear on occasions when there is no intention of becoming submerged does not change the basic nature of the articles or take them out of the class intended to be taxed.

Class (4), above described, presents a more difficult problem. There is no intent indicated in the statute to tax play suits as such or to tax clothing merely because it may be used on beaches or around pools when the clothing is not adapted or suitable for use while its wearer is diving, swimming or bathing. The court is, therefore, of the opinion that a tax should not be exacted for the sale of garments for beach play or for sunbathing which are not designed, intended, adapted or sold for use while in the water unless sold under the name or designation of swimming, diving or bathing suits. But if garments have the general appearance of

bathing suits and are sold as "bathing suits" or "swim suits" the manufacturers' designation should control, and the tax should be collected. This does not mean that articles of the 3rd class may be sold free of the tax merely by changing the name. It does mean that articles of the 4th class if not sold as swimming, diving, or bathing apparel and sold under such circumstances that it is made clear that they cannot practicably be actually used in the water are not subject to tax.

*Case No. 19205*

*Southern Fish Culturists, Inc.*

Southern Fish Culturists, Inc. first argues that live fish bait such as worms, minnows, crickets, eels and maggots when grown commercially are agricultural products and, as such, are exempt from the tax. An examination of the statute discloses that it contains no express exemption of agricultural products. It will be noted that the exemption of agricultural products from the retail sales tax is found in subsection 212.07 (5), Florida Statutes. Chapter 63-527 specifically incorporates as a part of that act subsections 212.07 (2), 212.07 (3), and 212.07 (4) but omits any reference to subsection 212.07 (5). The adoption of some parts of section 212.07 in chapter 63-527 and the clear omission of any reference to other parts of section 212.07 indicates a legislative intent that the omitted parts of section 212.07 should not apply to the subject matter of chapter 63-527.

Southern Fish Culturists, Inc. next contends that the use of the word "lure" in the statute coupled with the omission of the word "bait" indicates a legislative intent that the tax should be imposed only upon artificial lures, and that the sale of natural fish foods which are commonly described as "live bait" or "cut bait" are not within the scope of the tax.

If the tax were levied upon "lures", a difficult problem would be presented. While the dictionary definition of the word is sufficiently broad to include all forms of "live bait" or "cut bait" the common parlance of fishermen tends to give the word "lure" a connotation implying the word "artificial". This might justify a taxing statute being construed so strictly as to give the word "lure" its most restrictive meaning.

But the tax is a tax upon the sale at wholesale of "fishing, hunting, camping, swimming or diving equipment." Live bait is certainly fishing equipment. If there were any doubt on that question it would be removed by the statutory definition which states that "Fishing, hunting, camping, swimming, and diving equipment means and includes any device, implement, tool, article, or object customarily or primarily used, operated, or consumed

by participants in the course of and in the furtherance of the recreational pursuit of fishing, whether in salt or fresh water . . ." The only place in the statute in which we find the word "lure" is in a list of examples of articles taxed beginning with the words "including but not limited to." Under these circumstances, the court cannot construe the statute as imposing a tax upon the sale of artificial lures and exempting natural lures.

It is, therefore, considered, ordered, adjudged and decreed — (1) Chapter 63-527 is not unconstitutional or invalid, nor is the title to this act insufficient to give notice of its contents in the respect discussed in this order. (2) The sales at wholesale of the several items of merchandise, above discussed, are taxable or not taxable as stated in the recitations above. (3) The findings of law and fact set forth above are respectively declared to be the law and facts applicable to the situations described. (4) Jurisdiction is retained in cases no. 19119 and no. 19157 so that an injunction may be applied for if the defendants fail to respect the declarations herein made. (5) Case no. 19205 is dismissed with prejudice.